JUNIOR, *Appellant*, v. MISSOURI ELECTRIC LIGHT AND POWER COMPANY.

Division Two, March 5, 1895.

1. **Practice**: CONTINUANCE. Where a party to a suit announces ready for trial and the jury is selected and accepted, it is too late for him to ask for a change of venue because of objection to the inhabitants of the county.

2. **Electric Light Company**: EMPLOYEE: CONTRIBUTORY NEGLIGENCE. Where an experienced employee of an electric light company neglected to use rubber gloves furnished by the company and brought his hands in contact with wires which were obviously not insulated and lost his life the company is not liable for his death.

*Appeal from St. Louis City Circuit Court.*—HON. JOHN A. HARRISON, Judge.

AFFIRMED.

*Harvey & Hill* for appellant.

(1) It was the duty of defendants who knew of the danger to which the deceased was exposed to warn him of the same. *Wilkins v. Railroad*, 101 Mo. 106; *Hurt v. Railroad*, 94 Mo. 255. (2) The court erred in withholding the case from the jury because the proof was not conclusive that deceased knew of the danger to which he was exposed or that he would have seen the same even if he had looked in the proper direction. *Lynch v. Railroad*, 112 Mo. 433; see, also, 106 Mo. 423; 108 Mo. 480. Again, it was error to hold the deceased guilty of contributory negligence on the ground that the wires were equally exposed to both.

*Pollard & Werner* for respondent.

(1) The abstract required by the rule of this court is intended to stand as a substitute for, and in lieu of, the record, and the latter will not be examined, but the abstract will be relied upon, and the cause decided upon it. *Craig v. Scudder,* 98 Mo. 664. (2) Where the facts being admitted are not sufficient, together with the inferences which a jury might legally draw therefrom, to support a verdict, on motion, instruction to the jury to find for the defendant is proper. There is no evidence to show that appellant was entitled to recover; there is no evidence tending to show negligence on the part of respondent, and the evidence does show such contributory negligence on the part of deceased as bars a recovery for his death. (3) Deceased was guilty of contributory negligence. *Flood v. Tel. Co.,* 131 N. Y. 603.

GANTT, P. J.—This is an action for personal damages, by the widow of Alfred Junior, alleged to have been caused by the defendant's negligence in leaving its electric wires defectively and insufficiently insulated and covered, whereby her husband, who was a lineman in the employment of defendant, came in contact with said wires on the first day of December, 1890, while in the discharge of his duties as lineman, and was killed.

The answer was a general denial, plea of contributory negligence on the part of deceased in the careless handling of the wires and his neglect to wear the rubber gloves furnished him by defendant, the same being perfect nonconductors of electricity, and that it was the duty of deceased as a lineman to observe and know the condition of the wires as to insulation, and it was his duty to have examined the said wires as to insulation

before coming in contact with them; all of which was well known to him; that the inspection of these wires was necessarily left *to the linemen* as the employees who made the connections and ascended the poles.

The cause was tried to a jury in March, 1893, and on the ninth of March the court sustained a demurrer to the evidence. A motion for new trial was overruled and plaintiff appeals.

The errors assigned are three: *First.* In refusing plaintiff a change of venue. *Second.* In sustaining a demurrer to the evidence. *Third.* In excluding certain contracts of defendant with the city of St. Louis.

I. There was no error in refusing the change of venue. The record discloses that on the third day of March, 1893, both parties appeared by their respective attorneys, announced ready for trial, and a jury of twelve good and lawful men was selected, tried, and sworn, and thereupon the cause was continued until the next morning, or Saturday, March 4, 1893. On Saturday, and after the jury was impaneled, plaintiff filed her affidavit and petition for a change of venue on the ground that the defendant had an undue influence over the minds of the inhabitants of St. Louis, and that the knowledge came to her after the jury was impaneled. The cause was continued to Monday, the sixth, and the application was denied.

We think this application came too late. After a party has announced ready for trial, selected and accepted a jury to try his case, it is too late to say the inhabitants of the county are under the influence of the opposite party. The law exacts more diligence than this and the mere formal statutory affidavit will not convict the court of error who refuses a change of venue on no better showing. No complaint was made of the judge, and as he determined the cause it is

absolutely certain that the supposed influence of defendant over the inhabitants wrought no substantial injustice to plaintiff in this particular case.

II.   The all important question in this record is the propriety of the court's action in sustaining the demurrer to the evidence.

The negligence of which plaintiff complains here is the failure of defendant's foreman, in charge of the squad of men who were to make the connection of defendant's electric plant with the butcher shop on the Manchester road, to caution plaintiff's husband in regard to the exposed condition of the ends of these two wires.

The evidence shows beyond cavil that the plaintiff's husband was an experienced lineman; that he had worked for defendant in this capacity for several years; that he had also worked for other electric companies; the evidence shows that deceased ascended the pole alone that day to make the connection; that it was broad daylight; that two "live wires" of the defendant were devoid of insulating material at their extreme ends for the space of one eighth or one sixteenth of an inch; and that deceased sat upon a cross arm of the pole *preparing to connect a wire for the butcher shop with these ends;* that the fact that these two ends of the wires were not insulated was open and obvious, and could not only be seen by one in the close proximity thereto of the deceased at that time, but both Baldwin and Baurman testify that they saw the two exposed ends from their position on the ground, thirty feet distant; Baldwin was a brother-in-law of deceased.

It appeared that deceased was an experienced lineman; understood his business and *that the linemen were the only employees of defendant who went on the poles and handled, connected,* and repaired the wires thereon and the only employees who had an opportunity to inspect

and know the condition of the wires; the testimony of the brother-in-law, the foreman of the squad, was that he did not caution the deceased that the ends of the wires were exposed that day because it was not only open and obvious, but it was the peculiar business of deceased to see and know that, and the connection was to be made with these wires. It further appeared that deceased was furnished by defendant a pair of rubber gloves as a protection in handling "live wires" and that he had these gloves under his belt as he ascended the pole, and did not have them on when he received the fatal shock.

No one saw deceased when he received the shock. When killed he was sitting on the cross arm surrounded by a net work of wires. There were six arms on the pole upon which he had climbed on which were strung the wires of the telephone and telegraph companies and of the fire alarm service, *all charged with electricity and all uninsulated*. After his death, in the palms of each of deceased's hands was found a round blister spot as though burned.

There was no evidence tending to show any custom among electric companies to cover the extreme ends of wires upon poles with protecting material. It did appear that these two exposed ends were some thirty feet from the ground on the pole, and that no one was exposed to them, and none of defendant's employees except linemen were required to be near them.

The facts of this case bring it within the familiar principle that if a servant, capable of contracting for himself, and with full notice of the risk he may run, voluntarily undertakes a hazardous employment, or to place himself in a hazardous position, or to work with defective tools or appliances, the master is not liable for injuries received from these known risks.

It often happens that both natural and artificial

persons are engaged in exceedingly dangerous business and, if it is not unlawful, may employ servants to perform dangerous duties, and yet not be liable to its servants for injuries received therein, if the servants are capable of contracting and know the risks attending the business. The handling of live wires is a most dangerous business, but plaintiff's husband knew that when he entered into the employment. He was not a minor, nor an inexperienced workman, to whom the dangers of the business were unknown. The danger to which he was exposed was open and obvious. He was as cognizant of the danger, if not more so, than the foreman, and the failure to caution him can not avail where he is as well acquainted with the hazard as his employer.

By way of argument it was contended that it was negligence to leave the ends of the two wires uncovered, without some proper protection, but it will be remembered that no one but the linemen could be exposed to these uncovered ends, elevated as they were on poles thirty feet above the surface of the earth, and in this particular case had these two ends been insulated with buttons or caps, they must have been removed by this lineman to enable him to connect the wire with the butcher shop. It seems very clear that this misfortune befell him through his neglect to use the rubber gloves provided for this very work. He assumed the risk of handling these wires charged with electricity. The employment was very hazardous and inherently dangerous in its very nature, but he undertook it with knowledge of its dangers, and he was bound to exercise care to avoid the consequences. The evidence shows most conclusively that by his own neglect of the means furnished him by his employer, he brought his hands in contact with the wires and lost his life. It is greatly to be regretted, but the master is not liable. *Cummings v. Collins*, 61 Mo. 520; *Coombs v. New Bedford, etc.*,

Co., 102 Mass. 572; *Clarke v. Holmes*, 7 H. & N. 937; *Anthony v. Leeret*, 105 N. Y. 591; *Gibson v. Railroad*, 63 N. Y. 449; *Porter v. Railroad*, 71 Mo. 78; *Keegan v. Kavanaugh*, 62 Mo. 230; *Williams v. Railroad*, 119 Mo. 316.

III.   Plaintiff offered in evidence certain ordinances of the city regulating the placing of wires, tubes or cables conveying electricity for the production of light or power along the streets, alleys and public places in the city of St. Louis and a certain contract made by defendant company with said city to light certain districts with electricity.   On objection, these were excluded.   We are unable to see, and counsel has not pointed out, the relevancy of these ordinances and contract.   He did not offer to show their materiality and in the absence of such a showing we have nothing before us for review.

Finding no error we affirm the judgment.   SHERWOOD and BURGESS, JJ., concur.