The decree is affirmed, with costs.

---

## CO-OPERANT TELEPHONE CO. v. ST. CLAIR.

(Circuit Court of Appeals, Second Circuit. March 16, 1909.)

### No. 61.

1. MASTER AND SERVANT (§ 102*) — INJURIES TO SERVANT — DUTY OF MASTER — "REASONABLE" CARE.

A master is bound to use reasonable care in securing the employé a reasonably safe place to work and to be reasonably careful in warning the servant of any special and peculiar dangers incident to some particular locality concerning which the master is advised, or should be advised, if he has been reasonably careful; the word "reasonable" being one of no precise definition, but varying in signification with the circumstances of each particular case.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 173; Dec. Dig. § 102.*

For other definitions, see Words and Phrases, vol. 7, p. 5953.]

2. MASTER AND SERVANT (§ 217*) — INJURIES TO SERVANT—ELECTRIC LINEMEN — ASSUMED RISK.

While a lineman, engaged in working on poles carrying wires heavily charged with electricity, assumed the risk of encountering, on a clear day without moisture, wires carrying such current, with such insulation as might be expected on wires so placed and which had been in service and exposed to ordinary wear and tear, he did not assume a risk, of which he was ignorant, that, by the act or with the assent of those in charge of such wires, insulation had been intentionally removed and never replaced.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 584; Dec. Dig. § 217.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

3. MASTER AND SERVANT (§ 289*)—INJURIES TO SERVANT—CONTRIBUTORY NEGLIGENCE—QUESTION FOR JURY.

In an action for death of an electric lineman by coming in contact with a heavily charged wire from which the insulation had been removed and not replaced, whether decedent was negligent in failing to detect the removal of the insulation when he stood at the foot of the pole, or as he was climbing it, was for the jury.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. § 1106; Dec. Dig. § 289.*]

In Error to the Circuit Court of the United States for the District of Vermont.

This cause comes here upon appeal from a judgment entered upon the verdict of a jury in favor of defendant in error, who was plain-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

tiff below. The action was brought under the New York statute to recover for the death of Nelson J. St. Clair, a lineman in the employ of defendant, who was killed by coming in contact with a wire or wires carrying a high voltage current.

O. M. Barber (J. Sanford Potter, of counsel), for plaintiff in error.
T. W. Moloney, for defendant in error.

Before LACOMBE, COXE, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The telephone wires upon which deceased was working carried a current not sufficiently strong to injure him. The wires with which he came in contact belonged to a light and power company and were strung along a street in Whitehall, N. Y., above a line of telephone wires. About two years before the accident, which happened July 27, 1905, the wires of the light company sagged at the locality in question and thus approached the lines of the telephone company. The latter complained to the light company; but, its complaints not being attended to, defendant erected a framework on its pole, extending above its own wires, and on the top of this frame it fastened the light wires. The pole thereafter carried two cross-arms, on which were strung 16 or 17 telephone wires. These cross-arms were about 20 inches apart, and above, at a distance variously estimated by the witnesses at from 21 inches to 2½ feet, was the top of the framework, carrying 5 light wires, of which, on the day of the accident, two were carrying current. Deceased was directed to climb the pole and fasten 2 of the telephone wires, recently strung, to pins on the lower cross-arm near its outer end. He climbed the pole, using spurs, reached and placed his feet on the lower cross-arm, straddled over the wires on the upper cross-arm, and bent down and over to reach the wires he was to fasten. In some way, not clearly indicated, while engaged in that work he straightened up so as to come into contact with the two light wires and received the current which killed him.

In the winter before the accident—January or February—in order to thaw out a frozen water pipe, the insulation was removed from these two wires for a distance of 2 or 3 inches, and copper wires were fastened to them and were led into an adjoining building. When the pipe was thawed out these copper wires were clipped off, but nothing was done towards restoring the insulation. The places where it was removed were distant from the pole about as far as the man who removed the insulation could conveniently reach. Subsequently, the wires being tightened, they were drawn somewhat nearer to the line of the pole. There was evidence from which the jury was fully justified in finding that the denuded places were plainly visible to any one who looked at them from the street when standing near the foot of the pole, although if he were close to the pole, as he would be when about to climb it, they might not be apparent, being hidden by the pole or cross-arms. There was no regular periodical inspection of the poles and wires, but all linemen were instructed to be careful and to report any defects they might discover when working on the line.

The general manager of the defendant, who put the deceased to work, testified that he did not himself know before the accident of these two denuded places on the light wires.

Deceased had worked as lineman for the defendant at other places, but this was his first job in Whitehall. The general manager testified at some length as to a warning he gave him. From his various statements the jury were justified in finding the facts to be as follows: At about 10 a. m. (the accident happened in the afternoon) deceased was working on a pole near the footbridge fixing a street arc light which the witness had taken pains to find out was carrying no current. That wire he had to "cut around the pole and place in a better position, so that the wires would be arranged more systematically and that would be a safer place when the current was turned on." Prior to this time current was not run through the light wires at Whitehall in the daytime, but shortly before July 27th a day current had been started through two of the five wires. It occurred to the general manager that the men might be misled as to the situation by reason of the circumstance that there was no current in the light wire on which deceased was then working. He therefore called to the deceased as he was splicing the wire, pointed up to the wires overhead, and said:

"Those wires are carrying a day current now, and you must be careful about them."

He further testified that he again said the same thing to deceased and another lineman; but there is nothing to warrant the conclusion that this warning was given at the pole where the accident happened, or was other than a general warning that the light wires, or some of them, were carrying current.

Such being the facts, it seems unnecessary to discuss the numerous authorities cited on the briefs. Well-settled principles of law determine the conclusion. It is the duty of the master to use reasonable care in securing the employé a reasonably safe place to work, and to be reasonably careful in warning the servant of any special and peculiar dangers incident to some particular locality, about which the master is advised or should be advised if he has been reasonably careful; the precise definition of the word "reasonable" varying, of course, with the circumstances of each particular case. When the defendant fastened the light wires to its own pole and maintained them there for two years, it made them a part of the place where it put its own employés to work. Quite probably the light company was negligent, first in letting its wires sag so near the telephone poles as to interfere with work on them, and afterwards in removing insulation and not replacing it; but the circumstance that plaintiff might have recovered, had he sued the light company, is no bar to his recovering against defendant if he can show negligence on its part. Upon the uncontradicted testimony the jury was warranted in finding that the denudation of the light wires was so obvious, even from the street, and had continued so long—five months at least—that defendant was charged with knowledge of its existence, and that reasonable care for the safety of its employés required it to notify

them of the existence of this especial danger to which workers on that pole would be exposed.

It is contended that, when deceased climbed the pole after being warned that there was current running in the two wires, he assumed all risks. No doubt he did assume the risk of encountering on a clear day, without moisture anywhere, wires carrying a high current, with such insulation as might be expected on wires so placed and which had been in service and exposed to ordinary wear and tear; but he did not assume the further risk, being ignorant of it, that by the act of or with the assent of those in charge of such wires insulation had been intentionally removed and never replaced. The jury were justified in finding, as they did, under the charge, that:

"This was an extraordinary danger, that was not a part of the risks that were assumed by the employment."

We cannot say upon the evidence that as matter of law the deceased was negligent, either in failing to detect the denudation when he stood at the foot of the pole, nor as he climbed it, when, as one of defendant's witnesses testified, he would naturally be looking down, nor in trying to tie on the telephone wires by stooping over the second tier of wires, instead of trying to stretch out in the 20 inches between the two cross-arms. All these matters were properly for the consideration of the jury, which has found on this question in his favor.

We do not find any errors in the charge, nor in the refusal of certain of defendant's requests.

The judgment is affirmed.