PEOPLE'S TELEPHONE CO. et al. v. CONANT.

(Circuit Court of Appeals, Seventh Circuit. April 23, 1912.)

No. 1,825.

MASTER AND SERVANT (§ 217*)—DEATH OF SERVANT—ASSUMED RISK—ELECTRIC WIRES.

Decedent, a man of mature age and fairly well educated, having previously worked about electric plants and being familiar with the dangers attending telephone and electric light wires, was employed as a "trouble man" by defendant telephone company. He was sent to repair a broken wire strung on a cross-arm above electric light wires, knowing that the light wires were not insulated, except to protect them against the weather, and that if the telephone wire came in contact therewith it would be dangerous. While working on the wire, it came in contact with the electric light wire, and decedent was slightly shocked, but not injured. Thereafter he attempted to draw the telephone wire taut, when it again came in contact with the electric light wire, and he received a shock which resulted in his death. *Held*, that the danger was not latent, but that decedent proceeded with knowledge thereof and assumed the risk.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 574–600; Dec. Dig. § 217.*

Assumption of risk incident to employment, see note to Chesapeake & O. R. Co. v. Hennessey, 38 C. C. A. 314.]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

In Error to the Circuit Court of the United States for the Western District of Wisconsin.

Action by Mary A. Conant, as administratrix of the estate of Carroll E. Conant, deceased, against the People's Telephone Company and the Superior Water, Light & Power Company. Judgment for plaintiff, and defendants bring error. Reversed and remanded.

Defendant in error, hereinafter called plaintiff, recovered judgment against plaintiffs in error, hereinafter termed, respectively, the Telephone Company and the Light and Power Company, for $5,130.11, on March 13, 1911, in a suit brought to recover damages sustained by reason of the death of plaintiff's intestate, caused by an electric shock, alleged to have been the result of the joint negligence of both plaintiffs in error, at the corner of Logan avenue and an alley in the city of Superior, state of Wisconsin, on or about August 25, 1909. Plaintiff's decedent was, at the time of the accident, about 26 years of age. He had received a fair education. He had theretofore worked in a general store at Minneapolis for two years, and had been employed as "trouble man," and as such had repaired breaks on telephone wires, for more than two years for the Tri-State Telephone & Telegraph Company in said city of Minneapolis. During this period he had a number of trouble cases each day growing out of wire crossings and other causes, and was experienced in making crossings of the kind here involved. This work he sometimes attended to alone, and sometimes in company with another man. On or about July 27, 1909, he was employed as trouble man and inspector of the lines and instruments of the Telephone Company— a combination man. As such, he was called upon to install telephones, repair instruments, wires, and cables, and any other work that one man can accomplish. The Telephone Company and the Light and Power Company had some 400 crossings in the city of Superior. At the place where the accident occurred, the telephone lines extended east and west along the alley at a height of about 1½ feet above the light and power lines, and rested on arms built upon the telephone poles. The lowest line was about 20 feet from the ground, and carried between 75 and 175 volts. The electric light wires carried a voltage of about 2,300. There was little or no insulation of the latter wires—only just enough to protect them from the elements. It was the custom on receipt of complaint to give a trouble slip to the trouble man, stating what and where the trouble was. On or about August 21, 1909, at about 9:30 a. m., decedent was given three trouble slips, among which was one pertaining to the location here involved. He had then been in the Telephone Company's employ about 25 days. He proceeded to Logan avenue and the alley crossing, and began the task of remounting the telephone wire upon the cross-arm where it belonged. He was warned several times by the Telephone Company's wire chief, Skuse, about the danger of the light and power wires—not to place telephone wires over light and power wires alone, and not to run any chances and to report before he did it (as was done with every man doing that work, as an extra precaution, so Skuse testifies).

About 1 o'clock, at the office, the decedent asked for a hand line, saying he wanted to put up a wire. Not being able to get one, he said he would take a marline; that is, a small piece of cord—a nonconductor. On the day before the accident, a Mr. Tift, an employé of the Light and Power Company, had gone out to the place of trouble, and had found one of the telephone company's wires broken from the first pole east of Logan avenue. A piece 3 or 4 feet long was hanging from the cross-arms. The other broken end was hanging over the Light and Power Company's wires and lying across Logan avenue on the sidewalk, depending from the pole on the west side of Logan avenue. He cut the wire and drew it off the Light and Power wires. He then rolled it up and laid it next to the foot of the pole. When the decedent arrived at the place of the trouble, he proceeded to replace the wire alone. He was seen by the persons living near, working west of Logan avenue, and then going east. He spliced a piece of wire onto the broken line, which was then not charged. This he carried up the telephone

198 F.—40

pole east of Logan avenue attached to the marline. The neighbors heard him exclaim, and one of them went to him with a tender of help. Decedent said he had received a little shock, but was then all right, and proceeded to descend. He then began walking backward, pulling the wire which he had drawn over the Light and Power wires and over the cross-arm of the first pole east of Logan avenue, where it belonged. He seemed to be dragging the wire beyond the cross-arm, so as to wrap it about an adjacent pole for the purpose of holding it off the Light and Power wires, in order that he might be able to keep it dead for the purpose of completing the splicing of it. He was seen to fall while walking backwards and pulling the wire. When the neighbors came to him, he was lying on his back dead, with his head toward the north and having a flame coming up from his hands. The wire, which had been attached to the marline 3 or 4 feet from its end, was lying upon his right wrist, extending down near his right hip and between his legs and spur. There were fragments of wire lying about upon the irregular surface of the alley.

Complaint was filed on August 19, 1910. The acts of negligence charged are: First, that plaintiffs in error located their several wires in such close proximity to each other as to expose persons working thereon to great and imminent danger; second, that they, respectively, so negligently located the said several wires that they were liable to sag and destroy insulation, and to be and were dangerous to persons working on the telephone wires; third, that the wires were permitted to remain without insulation; fourth, that it was negligent not to place the wires under ground; fifth, that the wires were permitted to remain without proper guard wires; sixth, that the Light and Power Company did not comply with its charter and franchise as to insulation; seventh, that decedent was exposed to great danger, of which he did not know, and of which he was not warned.

The plaintiffs in error filed their respective answers, denying each and all of the said alleged charges of negligence. On the trial, evidence was adduced in substance as aforesaid, so far as material here. At the conclusion of plaintiff's evidence and all of the evidence, they severally moved the court for an instructed verdict, which was denied. They then asked the court to submit certain questions to the jury to answer as part of their verdict, under the state court practice, which motion was denied. They then moved the court to give certain other instructions to the jury, which the court refused to do. After verdict they moved the court for judgment notwithstanding verdict, and for new trials, both of which were denied, and exceptions entered. The jury having found for the plaintiff below, judgment on the verdict was entered as above stated, whereupon the writ of error herein was sued out. For errors, plaintiffs in error assign the following among others, viz.: (1) That the court allowed evidence as to the custom of placing electric wires over telephone wires and the purpose of doing so; (2) that the court denied the motion of defendants below to instruct the jury to render a verdict in their favor respectively, at the close of the plaintiff's evidence, and at the close of all the evidence, respectively; (3) that the court denied the motions of the several defendants below for judgment notwithstanding verdict.

Further facts deemed material are stated in the opinion.

L. K. Luse, for plaintiff in error People's Telephone Co.

Joseph B. Doe, for plaintiff in error Superior Water, Light & Power Co.

H. W. Dietrich and John Jenswold, Jr., for defendant in error.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

KOHLSAAT, Circuit Judge (after stating the facts as above). This case is practically on all fours with Bell Telephone Company v. Detharding, 148 Fed. 371, 78 C. C. A. 185. It appears from the undisputed evidence that plaintiff's decedent was of mature age and

fairly well educated. He was possessed of ordinary native and business intelligence. He had, prior to the accident, been engaged in and about electrical plants, and was familiar with and versed in the dangers attending telephone and light wires. He had been engaged as a "trouble man" in that service, wherein he was obliged to deal with situations of like risk with that here involved, and was also notified that the task was dangerous. There was no hidden danger at the place of the broken wire. He saw that the telephone wire was strung above the light wire, as was the case in Telephone Company v. Detharding, above cited. He knew that the former wire would take the current from the light wire, were it allowed to rest upon it. He knew that neither of them was insulated for other than weather protection purposes, and that the situation was a dangerous one. This is plainly shown by the care and precaution he took in getting the nonconducting marline for the purpose of dragging the broken wire across the light wire. Even had he been unable to see these dangers, the shock he received when upon the cross-arm, to which he sought to fasten the telephone wire, or where he sought to splice it to the west end of the break, was indubitable notification that the telephone wire took the light current from the latter wires when resting thereon. Indeed, his main effort was to draw the former taut, so as to lift it from the latter. The circumstances seem to indicate that, while pulling on the marline as he walked backward to the pole, to which he might attach the marline and hold the telephone wire free of the light wire, his person in some way came in contact with the latter before it was clear of the light wire, and when it was taking the light current from the light wires, and was shocked to death.

As was said in Telephone Co. v. Detharding, supra, he was seeking to remedy the very trouble which killed him. The present case is even stronger for the defendants than that just cited. There he could not see the disarrangement of the wires which carried death. Here he knew that, if the thing happened which did happen, his life would be in jeopardy. He was advised that he could have a man to help him, if he desired. Whether or not some other manner of stringing the two sets of wires would have been generally safer or more usual is not established from the evidence. Even had it been, it would not have been of moment here, because the danger was not only apparent, but clearly demonstrated, to decedent. The evidence entirely fails to disclose any negligence on the part of the defendants, or either of them. Nor does it show negligence on the part of plaintiff's decedent. So far as can be gathered from the evidence, the death resulted from one of those accidents for which no one was responsible. Whatever the cause, it was, so far as disclosed in this record, one assumed by the decedent, for which his administrator may not recover. The motion to take the cause from the jury should have been granted.

The judgment of the Circuit Court is therefore reversed, and the cause remanded for a new trial.