WESTINGHOUSE ELECTRIC AND MANUFACTUR-
ING COMPANY, A CORPORATION, ET AL.

*vs.*

STATE OF MARYLAND, USE OF MARGARET A. MONROE,.
ET AL.

*Employer and employee: duty to provide place of safety;*
*assumption of risk; when work itself is dangerous;*
*electric power houses.*

A master is obliged to provide a servant with a reasonably
safe place in which to perform his duties.                    p. 62

The term *"assumption of risk,"* in the law of master and
servant, embodies a term in a contract of employment, either
express or implied from the circumstances of employment, by
which the employee agrees that the dangers ordinarily or ob-
viously incident to the discharge of his duties in the particular
employment shall be at his own risk.                          p. 62

The rule that the employer must furnish a reasonably safe
place in which to work has no application to cases in which the
work itself makes the place insecure; in such cases the employee
takes upon himself the additional risk arising from the exist-
ing condition of the work or the place.                       p. 63

An experienced foreman in a large electric power house, who
was familiar with all the installation, and had in fact helped
to equip the plant, and was well versed with its dangers, and

himself had placed a sign *"Dangerous*: 13,000 *volts,"* over a place most dangerous on account of its proximity to powerful electric currents; while putting a converter in place he allowed his head to come in contact with a switch charged with the heavy current of 13,000 volts, from the effects of which his death resulted; there°was no evidence of negligence on the part of the defendant: *Held,* that the jury should have been instructed to find a verdict for the defendant, upon the basis of the risk assumed by the husband and father of the equitable plaintiffs.                                                    p. 66

*Decided June 22nd, 1916.*

Appeal from the Court of Common Pleas of Baltimore City (DAWKINS, J.), where a judgment was entered upon a verdict in favor of the plaintiff for $16,000.00.

The facts are stated in the opinion of the Court.

The cause was argued before BOYD, C. J., BRISCOE, BURKE, PATTISON and STOCKBRIDGE, JJ.

*Geo. Weems Williams* and *E. M. Sturtevant* (with whom were *L. Vernon Miller* and *Raymond S. Williams* on the brief), for the appellants.

*Lee S. Meyer* and *Wallis Giffen,* for the appellees.

STOCKBRIDGE, J., delivered the opinion of the Court.

Alexander S. Monroe was employed by the Westinghouse Electric & Manufacturing Company on December 6th, 1913, and went to work two days later. The job on which he was assigned to work was the installation in the Westport Power House of the Consolidated Gas Electric Light and Power

Company of additional apparatus, by means of which the power was to be supplied for operating the Maryland Railway Company. At the time of his employment Mr. Monroe had been working for four or five years on the erection or installation of electrical appliances of various kinds. Originally engaged as a workman, by the second of February Mr. Monroe had become the foreman on this particular piece of work. On the last named date, and while putting a converter in place, his head came in contact with a switch which was charged with a current of 13000 volts, and he received a shock from the effects of which he died on the seventh of March following. This suit was brought under the provisions of the Code, Art. 67, secs. 1-4, for the benefit of his widow and minor son for the injury resulting to them from his death, under an allegation that the accident was due to the negligence of one or the other or both of the defendants.

During the progress of the trial twenty-six exceptions were reserved to rulings in regard to the admissibility of evidence, and one to the action of the Court on the 57 prayers presented to the Court.

By the granting of the 8th, 13th and 16th prayers offered on behalf of the Westinghouse Company, and the 2nd, 3rd, 4th, 6th, 7th and 8th prayers of the Gas Company, the 2nd, 3rd and 4th counts of the declaration were withdrawn from the consideration of the jury and these rulings disposed of the 9th, 10th, 11th, 14th, 15th, 17th, 18th, 19th and 20th prayers of the Westinghouse Company, and the 10th, 11th, 12th, 14th, 15th and 16th prayers of the Gas Company, and of a number of the exceptions relating to the admissibility of evidence. None of these are now before the Court for review, the plaintiff not having taken any appeal.

The only questions which remain are whether there was any act or omission on the part of either defendant which amounted to actionable negligence; whether there was any contributory negligence on the part of Monroe; and whether or not the accident which occasioned his death was one of the risks of the employment which he assumed.

It will not be necessary for the purpose of reaching a con-clusion on these questions to consider each exception and the remaining prayers seriatim, but it will suffice to deal with the facts disclosed by the record, applying the already well-defined principles of law applicable to such cases.

The allegations of negligence set out by the plaintiffs in the first count of the declaration are as to the Westinghouse Company, that it failed to provide the deceased a reasonably safe place in which to work, and as to the Gas Company that it allowed the wires and switch where Monroe suffered his shock to become charged with a powerful and deadly current of electricity, which fact was unknown to Monroe and could not have been known to him in the exercise of ordinary care.

.That a master is obliged to provide a servant with a reasonably safe place in which to perform his duties has been settled by a long and unbroken line of decisions of which *Manuel* v. *Cumberland,* 111 Md. 196; *Bernheimer* v. *Bager,* 108 Md. 551, and *Dettering* v. *Levy,* 114 Md. 278, are examples. But what constitutes a *safe place* is subject to considerable variation according to the nature of the work to be done and each case is, therefore, largely dependent upon its own facts, so in some cases it merges into the question of assumption of risk. This phrase embodies "a term in a con-tract of employment, either express or implied, from the circumstances of the employment by which the employee agrees that the dangers ordinarily or obviously incident to the discharge of his duties in the particular employment shall be at his own risk. * * * A term which the law imports into a con-tract when nothing is said to the contrary that the servant will assume the ordinary risks of the service for which he is paid; the voluntary exposure to the ordinary hazards of the particular use of machinery or appliances, claimed by an employee to be defective or unfit, but of which conditions he knew or must have necessarily acquired knowledge in the ordinary pursuit of his duties." 5 *Corp. Juris.* 1412.

This rule has been distinctly recognized in this State in a number of cases. Thus it is said in *Eckhardt* v. *Lazarette Co.,* 90 Md. 177: "In the case at bar, the nature of the employment of Eckhardt about the factory, and the length of time for which it had continued before the accident to him happened and the constant opportunity which he had to ascertain the nature of the employment and see the precautions which were observed in the factory by those whose duty in different parts of the establishment brought them in contact with the fumes of sulphuric acid, which the evidence shows was present in dangerous quantities at various points, especially at the places where the liquid acid was stirred or agitated, compel us to the conclusion that he knew or could reasonably have well known the dangerous character of the task he was about to perform when he entered the acid chamber to assist in reparing the leak. * * * To him, under these circumstances, the danger which he faced in assisting in the repair of the leaking acid chamber must be regarded as a patent and not a latent one, and the appellee against which there is no direct proof of negligence can not be held liable for the injury which the appellants have sustained by his death. The rule that the employer must furnish to the employee a reasonably safe place in which to work has repeatedly been held to have no application to cases in which the work itself makes the place insecure, as where a place is out of repair and the employee is engaged in making it safe. In such cases, the employee takes upon himself the additional risk arising from the existing condition of the work or the place."

And in *Gans Salvage Co.* v. *Byrnes,* 102 Md. 247, the late CHIEF JUDGE McSHERRY said: "An employee who contracts for the performance of hazardous duties, assumes such risks as are incident to their discharge from causes open or obvious, the dangerous character of which he had an opportunity to ascertain. *B. & O. R. R. Co.* v. *Stricker,* 51 Md. 47. * * * *Yates* v. *McCullough Iron Co.,* 69 Md. 370. This doctrine firmly grounded in the law of this State, in the law of Eng-

land and of probably every State in the Federal Union, though usually stated as a general rule, constitutes in reality an exception to or qualification of the broad principle which requires the employer to use ordinary care to provide a reasonably safe place in which the servant may perform his work. It may be taken, then, as a postulate that a servant who on entering into a contract of employment knows of the dangers of the premises or place of work or by the use of ordinary care could see and understand them, assumes the risks which arise therefrom. 20 *Am. & Eng. Ency. of Law,* 114."

And the same doctrine has also been announced in *Linton* v. *Balto. Mnfg. Co.,* 109 Md. 404; *McGee* v. *Cuyler,* 112 Md. 314; *B. & O. R. R. Co.* v. *Whitaker,* 124 Md. 411; *Hockaday* v. *Schloer,* 125 Md. 677; *Eyre-Shoemaker Co.* v. *Macklin,* 116 Md. 58; *N. C. Ry. Co.* v. *Wilson,* 117 Md. 482, and *L. & N. R. R. Co.* v. *Williams,* L. R. A. 1915 E. 613.

Fortunately there is no conflict in the evidence in this case. The salient and material facts are easily summarized: Monroe, the deceased, had been engaged for four or five years in working about electric wires, appliances and connections, and "must have necessarily acquired knowledge in the ordinary pursuit of his duties," of the danger incident to working upon or about wires and switches charged or liable to become charged with high and dangerous currents of electricity. That the place where his work was to be done was a dangerous one was shown by the cells, in one of which he received the fatal shock, being protected by a rail at a little distance in front, upon which in large letters the word *"danger"* appeared together with the Universal danger sign. And as if this was not sufficient there was suspended directly in front of the particular cell by cords an additional sign reading "13000 volts," which had been made that day by Monroe and his helper Ball. He is, therefore, shown not only to have been aware of the fact of the dangerous character of the place, but of the approximate power of the current at or

in close proximity to the place where he was at work. There was no evidence in contradiction of this, and it was, therefore, error to have refused the 22nd prayer of the Westinghouse Company by which the jury was instructed to find a verdict for that defendant upon the basis of the risk assumed by the husband and father of the equitable plaintiffs.

As regards the Gas Company the situation is somewhat different. The 19th prayer offered on behalf of that company was doubtless intended to have raised the question of the assumption of risk as to that company, and with a modification was granted by the Court. The equitable plaintiffs not having appealed, that prayer is not strictly before this Court for review, but it was unfortunately phrased and the natural tendency of it was to mislead the jury. Passing that by, was there any evidence of such negligence on the part of the Gas Company as to justify the submission of the case to the jury? The current in the bus-bar, connecting to the cell where Moore was at work, was generated by the Gas Company. The end of the building in which the work was being done was devoted to manufacturing the current which furnished power for the operation of the Maryland Railway Company. The negligence, if any there was on the part of the Gas Company, consisted in the cutting in of the current to this portion of the building. That it could be and had been so cut in was known to the deceased, for on the Saturday night before the Monday on which this accident happened, he had been present or actually assisted in cutting the current out. The presence of the current in the bus-bar and switches was necessary if the railway was to be operated, and here the language of JUDGE THOMAS, in *Linton* v. *Baltimore Mfg. Co.,* 109 Md. 404, is specially applicable: *"He"* (the servant) "must use reasonable care in examining his surroundings, to observe and take such knowledge of danger as can be attained by observation. In performing the duties of his place he is bound to take notice of the ordinary operation of familiar laws and to govern himself accordingly." The current had been cut out on Saturday night, but the fact that

it was subsequently cut in does not of itself constitute negligence, and this is further emphasized by the fact that on the day of the accident the sign "13000 volts" had been made by Monroe and Ball after eating their lunch, during which time they "were talking over it" and placed the sign "for safety," thinking that by so doing they would keep it in their minds.

There is a duty resting upon the servant to avoid injuries to himself and if he fails to do so that does not constitute negligence on the part of the employer, and it is a self-evident proposition that there can be no contributing negligence by a servant unless there is evidence tending to show primary negligence on the part of the master. That evidence being lacking in this case there was error in refusing the first prayer of the Gas Company.

In view of what has been said it does not seem necessary to review one by one the remaining exceptions as the questions already considered are determinative of this appeal, and the judgment must be reversed.

*Judgment reversed without a new trial.*