## Kentucky Public Service Company v. Morris' Admr.

(Decided June 23, 1922.)

### Appeal from Christian Circuit Court.

1. Appeal and Error—Master and Servant—Liability for Injuries—Instructions—When Error to Refuse a Concrete Instruction on As-

sumed Risk or Contributory Negligence.—While abstract instructions presenting the defense of assumed risk or contributory negligence are sufficient where it appears that the jury could not have been misled thereby, the refusal of an offered concrete instruction grouping the facts constitutin; assumed risk or contributory negligence is prejudicial error where such an instruction is necessary to present the defendant's side of the case, and without such an instruction the jury might conclude that the facts relied on did not constitute assumed risk or contributory negligence.

2. Master and Servant—Liability for Injuries—Assumption of Risk—Contributory Negligence.—A lineman who handled live wires with buckskin gloves, after he had been warned by the master not to handle them without rubber gloves which were furnished for that purpose, not only assumed the risk, but was guilty of contributory negligence, and no recovery can be had for his death if the transmission of the current through his hand was the proximate cause of his death; and the effect of his conduct cannot be avoided by evidence of alleged experts that the gloves furnished were not sufficient to afford protection, as that fact, if known to him, might have furnished him an excuse for demanding better gloves, but, in view of the warning, did not justify his incurring the risk of taking hold of the wire without the protection of rubber gloves.

3. Appeal and Error—Master and Servant—Assumption of Risk—Instructions.—In an action for the death of a lineman who handled a live wire with leather or buckskin gloves after he had been warned not to handle such wires without rubber gloves, it was prejudicial error to refuse a concrete instruction telling the jury in substance that if decedent knew of the danger, and, without the use of the rubber gloves which had been furnished him, took hold of the wire and was thereby injured and killed, he assumed the risk and could not recover, as the jury, if not correctly advised, might have concluded that the facts relied on did not make out a case of assumed risk.

4. Master and Servant—Death—Proximate Cause—Question for Jury.—In an action for the death of a lineman evidence considered and the proximate cause of his death held question for the jury.

5. Master and Servant—Death—Instructions.—Where in an action for the death of a lineman it is admitted that the insulation was defective, and the evidence that he was warned not to handle the wires without rubber gloves was uncontradicted, the court should instruct the jury to find for plaintiff unless they believe from the evidence that the transmission of the current through decedent's hand was the proximate cause of his death.

HUNTER WOOD & SON and JOHN B. RODES for appellant.

TRIMBLE & BELL and BREATHITT & ALLENSWORTH for appellee.

OPINON OF THE COURT BY JUDGE CLAY—Affirming on cross appeal and reversing on original appeal.

Joe Morris, a lineman in the employ of the Kentucky Public Service Company, was killed by electricity, and his administrator brought suit to recover damages for his death. In the first trial plaintiff recovered a verdict and judgment for $10,000.00. A new trial was granted and the second trial resulted in a verdict and judgment for $7,500.00. Defendant appeals and plaintiff, by cross appeal, asks a reinstatement of the first verdict and judgment.

The facts are as follows: The Kentucky Public Service Company operates an electric light plant in Hopkinsville, and its primary wires carry a voltage of 2,200, sufficient to produce death. The accident occurred on the afternoon of September 20, 1917. At that time Morris had been working for the company only about three weeks, but had previously worked for them in the year 1915. Morris and Cunningham had been engaged in the work of transferring wires from an old pole to a new pole, and were on the new pole at the time. On the pole were two double sets of cross arms, one at the top and the other about twelve feet below. The cross arms were about five feet long. Attached to glass insulators on the top cross arm were two primary wires which were extended perpendicularly to the insulators on the lower cross arm. When this was done, the wire stuck out twelve or eighteen inches. On the pole were two cut-outs, or fuse boxes, and a transformer. The purpose of the transformer was to reduce the force of the current to 110 volts in order that it might be employed for incandescent lights in homes and business houses. The top of the transformer was on a level with the lower cross arm, and the fuse box was attached about midway between the transformer and the insulator near the end of the cross arm. Morris was seated on the transformer with his left side to the pole. One wire was in his rear and the other in front. His task was to take hold of the projecting wire in front and attach it to the cut-out. He had on leather or buckskin gloves and in his right hand he held a pair of pliers, the insulation of which was defective. When he applied the pliers, he nicked the wire and was heard to groan. Cunningham, who was nearby and who also had on a pair of leather or buckskin gloves, cut the wire with his pliers and released him. He was killed by the shock. There was evidence

tending to show, and it was practically admitted by the defendant, that the wires on the pole were not properly insulated. There was also evidence to the effect that the pole was green chestnut and a better conductor of electricity than a cedar pole, and that it was wet at the time. Plaintiff further proved that, by the use of an oil switch and rubber sheet, all danger might have been removed. On the other hand, defendant's witnesses testified that an oil switch was only used for the protection of the public and not for employees, and that the use of a rubber sheet was not practicable where it was necessary for an employee to handle the wire. Several witnesses also swore that about a week or ten days before the accident, the superintendent told Morris never to handle live wires without rubber gloves, and if he knocked a hole in them, to cut the finger off and bring them back to the office and get another pair. On the morning of the accident Cunningham sent for two pairs of rubber gloves and delivered one pair to Morris, who used them in handling one of the primary wires. After the accident it was discovered that there was a hole in the thumb of the left-hand glove. Two or three linemen testified that the rubber gloves which were furnished Morris were not standard gloves, and were not suitable to the purpose. On the other hand, there was evidence that they had been tested and would withstand a current of 4,000 volts. An examination of Morris showed that he had a burnt place in the palm of his hand and on his leg, and that on his shoulder there was a place that looked like a burn.

In addition to instructions authorizing a recovery if decedent's death was caused by the defendant's failure to use the highest degree of care to so insulate its wires as to make them free from danger, or by its failure to use ordinary care to furnish decedent a safe place to work, the court gave a general instruction on contributory negligence. There is no complaint of the given instructions, but it is insisted that the court erred in refusing a concrete instruction telling the jury in substance that if Morris knew of the danger, and, without the use of the rubber gloves which had been furnished him, took hold of the wire and was thereby injured and killed, he assumed the risk and could not recover. Plaintiff argues that the offered instruction should not have been given as the issue therein presented was fully covered by the instruction on contributory negligence. While we have

held in a number of cases that abstract instructions presenting the defense of contributory negligence or assumed risk were sufficient where it appeared that the jury could not have been misled thereby, it is the settled rule that the refusal of an offered concrete instruction, grouping the facts constituting contributory negligence or assumed risk, is prejudicial error where such an instruction is necessary to present the defendant's side of the case and without such an instruction the jury might conclude that the facts relied on did not constitute contributory negligence or assumed risk. Peerless Coal Co. v. Copenhaver, 165 Ky. 195, 176 S. W. 1002. If the evidence be true, and it stands uncontradicted, the decedent was told not to handle live wires without rubber gloves, and was furnished rubber gloves for that purpose. Instead of using rubber gloves, he used a pair of leather or buckskin gloves. In doing this, he voluntarily exposed himself to a known danger, and not only assumed the risk, but was guilty of contributory negligence, and no recovery can be had if the transmission of the current through his hand was the proximate cause of his death, Junior v. Mo. Electric Light & Power Co., 127 Mo. 79. Nor could the effect of his conduct be avoided by the evidence of alleged experts that the gloves furnished were not sufficient to afford protection. That fact, if known to him, might have furnished him an excuse for demanding better gloves, but, in view of the warning which he had received, did not justify his incurring the risk of taking hold of the wire without the protection of rubber gloves. As the jury, if not correctly advised, might have concluded that the facts relied on did not make out a case of assumed risk, it cannot be doubted that the refusal of the concrete instruction, or one similar in effect, was prejudicial error. As the same error occurred on the first trial, there was no abuse of discretion in awarding defendant a new trial.

If it could be said as a matter of law that the transmission of the current through decedent's hand was the proximate cause of his death, then defendant would have been entitled to a peremptory instruction; but, in view of the evidence that decedent, in addition to the burnt place in his hand, had a burnt place on his leg and a place that looked like a burn on his shoulder, and of the further evidence that Cunningham, when he cut the wire with his pliers, had on leather gloves and was not injured, we think the question of proximate cause was for

the jury.  Indeed, as it is admitted that the insulation was defective, and the evidence that decedent was warned not to handle the wires without rubber gloves was uncontradicted, the question of proximate cause is the only one that should be submitted to the jury.  Therefore, if the evidence on another trial be substantially the same, the court will instruct the jury as follows:

You will find for plaintiff unless you believe from the evidence that the transmission of the current through decedent's hand was the proximate cause of his death.

On the cross appeal the judgment is affirmed.  On the original appeal the judgment is reversed and cause remanded for a new trial consistent with this opinion.

Whole court sitting.