FLOYD S. HESSER, Respondent, v. CITY OF CAR-
THAGE, Appellant.

In the Springfield Court of Appeals, December 7, 1923.

1. **ELECTRICITY: Contributory Negligence of Electrician Repairing Bulbs for Jury.** Where defendant's servants connected a wire carrying 2,300 volts to one carrying 110 volts causing some bulbs in a residence district to explode, whether an experienced electrician attempting to repair those in one house, a few moments after inspecting those in another and finding no indication of overcharging, was contributorily negligent, was a question for the jury.

2. **DAMAGES: $3500 for Injuries to Electrician's Hand Held not Excessive.** Where defendant's servants negligently caused an overcharge of electricity in a residence district and an experienced electrician, twenty-two or twenty-three years old, while repairing bulbs, received a shock knocking him unconscious and burning off the flesh on his right hand and thumb, with resulting nervous shock, indigestion, loss of weight and loss of wages, a verdict for $3500 was not excessive.

Appeal from the Circuit Court of Jasper County.—*Hon. S. W. Bates,* Judge.

.AFFIRMED.

*Frank R. Birkhead* for appellant.

Under the evidence in this case, the plaintiff was guilty of contributory negligence as a matter of law, and the peremptory instructions asked by the defendant should have been given and the case taken from the jury. Frauenthal v. Laclede Gaslight Co., 67 Mo. App. 1; Junior v. Mo. Electric Light and Power Co., 127 Mo. 79; Wray v. S. W. Electric Light and Power Co., 68 Mo. App. 380; Roberts v. Mo. and Kan. Telephone Co., 166

Mo. 370. (2) Under the evidence in this case the verdict was excessive. Parker v. Mo. Pac. R. R. Co., 164 Mo. App. 31; Henderson v. Heman Construction Co., 198 Mo. App. 423; Landrum v. Loose-Wiles Biscuit Co., 204 S. W. 930; Saller v. Friedman Bros. Shoe Co., 130 Mo. App. 712.

*J. D. Harris* for respondent.

(1) In view of the evidence the case was properly submitted to the jury. Joyce v. Mo. & Kans. Tel. Co., 211 S. W. 900; Warren v. Mo. & Kans. Tel. Co., 196 Mo. App. 549, 554; Hill v. United Electric Light and Power Co., 260 Mo. 43; Trout v. Gaslight Co., 151 Mo. App. 207. (2) The verdict is in a reasonable sum. Nibler v. K. C. So. R. R. Co., 197 Mo. App. 703. (3) It is the peculiar province of the jury in a personal injury case to determine reasonable compensation for the injuries sustained. Maloney v. United R. R. Co., 237 S. W. 509; Duffey v. K. C. R. R. Co., 217 S. W. 883; Beal v. K. C. Ry. Co., 227 S. W. 834.

FARRINGTON, J.—The plaintiff in this case, respondent here, recovered a judgment against the appellant for $3500 on a suit for personal injuries received from a shock and burn by electricity. The defendant owns and operates the city electrical plant in the city of Carthage, Missouri.

There are but two points raised on this appeal. One is that the evidence shows that the plaintiff's conduct was such as rendered him guilty of negligence which contributed to his injury; that therefore the court erred in not sustaining the demurrer to the evidence. Second, that the judgment is excessive.

To determine the first proposition it will be necessary to relate the facts incident to plaintiff's injury. The evidence tends to show that on the day plaintiff was injured the defendant's servants had negligently and improperly connected a wire carrying a voltage of

2300 volts with a wire that was supposed to carry but 110 volts, the 110 volt wire being one that distributed electricity in the residences along one of the streets in Carthage. There is also evidence tending to show that this fact was known to the foreman in charge of the work for several hours before it was remedied, and it was during this interim and after the foreman knew it that plaintiff came in contact with an electric wire and received his injury. The plaintiff was an experienced electrician, having had experience in his brother's electrical equipment shop in Carthage, also had experience with electricity while in the Navy, and had charge of the electrical operation of a moving picture machine. There is no doubt that he had much experience with the handling of electricity and was thoroughly cognizant of the many dangers attending the business he was engaged in. He was sent by his brother to go to the residence of John O'Keefe to ascertain the trouble and attend to an electrical fixture in that home. On arriving there he was told that the globes in the fixture which hung over the dining table had exploded and glass bursted and fell all over the floor and table. It is also shown that this character of breaking of the globes could only occur from an overcharge of electricity or from an external blow, and Mrs. O'Keefe and a maid in the house told him the circumstances under which the globes exploded. Just prior to his going to the O'Keefe home he had stopped, as the result of a call, at a neighbor's house one or two doors away from the O'Keefe house which house was wired on the same circuit that ran into the O'Keefe house, and there he disconnected a chandelier from the ceiling and stated that he saw nothing to indicate an overcharge of electricity while working on that. Before going to work on the fixture in the O'Keefe house he drew the fuses, which disconnected the wires in the house. He testified that he did this so he could unscrew the bases of the incandescent globes which were screwed into the

sockets in the fixture, and that where the globes are broken there being little wires that run down, if they are touched in unscrewing these bases a burn and shock would be received. After having taken out the bases of the broken globes he then replaced the fuses so as to connect up the house with electricity coming on the wire. Having done this, he returned to the fixture and in undertaking to screw the incandescent globes into the sockets he reached up with one hand and took hold of a chain which supported the weight of the lamp from the ceiling in order, as he says, to hold it while he screwed in the incandescent globes. Immediately upon taking hold of this he received a severe shock which knocked him down and unconscious for a short time and practically seared or burned the flesh off his hand and thumb. He was taken to a doctor who dressed the wound, and the testimony shows that he had to carry his hand in a sling for something like six months, and that pus formed and the flesh and part of the bone sloughed off.

On this statement of facts appellant contends that respondent is guilty of negligence as a matter of law. We cannot agree to this contention. It was shown in the evidence, and it is well known, that the current of 110 volts which goes into the ordinary dwelling house to furnish lighting will not severely injure one who might receive a shock from it. The plaintiff, therefore, under ordinary circumstances had the right to believe that the defendant was permitting only this small voltage to enter the line on which he was working. It is true that he, having been told that the globes had exploded, had information that when this took place a higher voltage or severe charge must have gone into that lamp, but there was nothing, as he says, and from his experience in taking down a chandelier on the same line a few moments before at an adjoining house, to indicate that there was any such severe charge then on the wires. If there had been a severe electrical storm the same morning, there being some evidence that there had been a severe electrical storm, he could reasonably have concluded that

lightning had gotten on this wire and caused this explosion, but that cause at the time he was called to repair the fixture was over and gone.

Appellant has cited a number of cases in which plaintiffs have been held guilty of contributory negligence, as a matter of law, and liability denied, but on examining these cases, such as Wray v. S. W. Elec. Light & Power Co., 68 Mo. App. 380; Junior v. Missouri Elec. Light & Power Co., 127 Mo. 79, 29 S. W. 988; Frauenthal v. Laclede Gaslight Co., 67 Mo. App. 1; Roberts v. Mo. & Kan. Tel. Co., 166 Mo. 370, 66 S. W. 155, we find that parties injured in those cases knew that they were handling wires which were charged with very high power, or that it was clearly apparent to any one that a dangerous charge or condition existed where they were working. We do not believe that the dangerous condition that existed was so apparent to plaintiff in this case that he might have known of it by exercising what would be considered ordinary care by the average man. At least we think that it would be a question of fact for the jury to say whether his conduct did in fact amount to negligence. He knew that this wire to which this chandelier was attached was not supposed to carry more than 110 volts. He knew that only a short time before he received the shock he had worked on another chandelier on this same line; and he testified that when he went to the O'Keefe house and withdrew the fuses there was nothing then on the line that indicated to him that there was an overcharge of electricity on it. This state of facts seems to us to be far different from one, as was the condition in cases cited by appellant, where the man handling the wires knew or could know by ordinary observation that the wire he was taking hold of contained a dangerous and high charge of electricity.

Under the following authorities, we think the court properly submitted the question to the jury: Joyce v. Mo. & Kan. Tel. Co., 211 S. W. 900; Warren v. Mo. & Kan. Tel. Co., 196 Mo. App. 549, 196 S. W. 1030; Hill v. Union Elec. Light & Power Co., 260 Mo. 43, 169 S. W.

345; Trout v. Laclede Gaslight Co., 151 Mo. App. 207, 132 S. W. 58.

The amount of the verdict in this case is not one, under the facts contained in the record, that indicates prejudice of the jury entered into it. The witnesses who saw plaintiff when he was shocked say he was knocked down and rendered unconscious; that the flesh on his thumb and hand in places was cooked and the burn entered into the bone, causing the slough off of the flesh and part of the bone. At the trial, which was about a year and a half after the injury, the thumb was stiff and very tender and reduced in size to what it was prior to the injury. The plaintiff and his physician testified that he suffered from the nervous shock; that it interfered with his sleep and digestion, and his weight had decreased from 162 to 165 lbs down to 140 lbs. The doctor testified that the symptoms he complained of and his condition as it appeared were naturally the result from such a shock of electricity. He is a young man twenty-two or twenty-three years old, and his injury is permanent. He will be required to carry through life this injured and disfigured hand and stiff thumb, rendered in such condition that the use of it, to say the least, is limited. There was evidence offered showing that he lost his wages for a considerable part of the time. As stated before, the amount of $3500 for this injury does not, under the record as we see it, indicate passion or prejudice on the part of the jury, nor does it shock the sense of justice of this court. Let the judgment be affirmed. *Cox, P. J.,* and *Bradley, J.,* concur.