## KREGER v. BALTIMORE & O. R. CO.

District Court, W. D. Pennsylvania. April 23, 1927.

No. 3475.

1. **Master and servant ⬚119—Railroad held not negligent in failing to provide certain type of cut-out switch, where death of employee resulted from failure to use switch provided.**

Where railroad employee, working as an electrical signal maintainer, was electrocuted as a proximate result of his own failure to use an effective cut-out switch provided by railroad, failure of railroad to provide a different type of switch, not being a proximate cause of injury, was not negligence.

2. **Master and servant ⬚129(1)—Railroad's failure to supply deceased employee with voltmeter held not negligence, when lack thereof was not proximate cause of death.**

Where death of railroad employee, working as an electrical signal maintainer, did not result because of failure of railroad to provide him with a voltmeter, in that he had a voltmeter applicable to low-tension wires and failed to apply it, failure of railroad to supply him with different voltmeter *held*, not negligence.

3. **Master and servant ⬚204(1)—Defense of assumption of risk constitutes complete bar to action not within Federal Employers' Liability Act (Federal Employers' Liability Act, § 4 [45 USCA § 54]).**

Federal Employers' Liability Act, § 4 (45 USCA § 54; Comp. St. § 8660), not being applicable to death of railroad employee working as an electrical signal maintainer, defense of assumption of risk is applicable to a case and constitutes a complete bar to action.

4. **Master and servant ⬚213(1)—Railroad employee, working as electrical signal maintainer, assumed risk of employment as respected death from electrocution when grasping live wire.**

Employee of railroad, working as electrical signal maintainer, having been in electric service of company for seven years, with knowledge of obvious danger incident to live wires and handling of them, *held* to have assumed risk of employment as respected death from electrocution when grasping live wires without opening switches, applying ground chains, and without rubber gloves.

5. **Jury ⬚131(4)—Trial court may determine questions to jurors on voir dire.**

Trial court has discretion to determine what questions shall be asked jurors on their voir dire.

6. **Appeal and error ⬚1045(1)—Error in selecting juror is harmless, where jury was given binding instructions.**

Where jury was given binding instructions to find for defendant, any error in manner of selecting juror was harmless.

Judgment affirmed in 25 F.(2d) 728.

Ralph W. Botham and Charles A. Ludlow, both of New York City, for plaintiff.

Allen T. C. Gordon, Smith, Buchanan, Scott & Gordon, and William H. Eckert, all of Pittsburgh, Pa., for defendant.

SCHOONMAKER, District Judge. This is an action by plaintiff, as administratrix of estate of Samuel B. Kreger, to recover damages for his death by electrocution on electric wires of defendant, on which he was working by virtue of his employment as an electric signal maintainer of defendant company.

The court directed the jury to return a verdict in favor of the defendant because there was no evidence of negligence on part of the defendant, and because Kreger assumed the risks of his employment.

The reasons urged by plaintiff's counsel in argument of his motion for a new trial are: (1) Error on the part of the court in giving binding instructions for defendant; and (2) error on the part of the court in refusing plaintiff her common-law right of examining the jurors as to their qualifications.

The following facts appear by the undisputed testimony on the trial:

Kreger, at the time of his electrocution, was division electric signal maintainer of defendant, and as such had charge of the maintenance and repair of the electric signal apparatus, operating its interlocking system at Rockwood, Pa. He had been in the electric signal service of the defendant for approximately seven years prior to his death, serving in the various grades of the electric service; i. e., helper, apprentice, assistant signal maintainer, and signal maintainer. He was an experienced electrician, familiar with the risks and hazards of his employment, and had been properly instructed by the defendant as to the use of certain precautionary measures in the handling of electric wires, any of which applied by him in the instant case would have avoided his injury and death; i. e., the cutting off of the electric current by opening switches on either side of the working point, the placing of ground chains over the wires on each side of the point where work was to be done, and the use of rubber gloves.

On the day of the accident, it appeared that the oil switch on the electric apparatus at Rockwood, known as the Connellsville or West oil switch, was smoking, thus indicating that it was out of order. Kreger, in

line of duty, undertook to remove the switch by a process of bridging the electric wires around it. Before going to work, Kreger talked with his immediate superior officer, Signal Supervisor Scott, who told him specifically to open the oil switch at Rockwood on the east end of the east-bound siding before going to work. This Kreger did not do. Before going to work, he cut off the Connellsville source of electric power which usually feeds the interlocking switch mechanism at Rockwood. Then, to keep the mechanism in operation, Kreger closed a circuit whereby electric power would be supplied to this switching system from a Cumberland electric plant. By doing this, Kreger energized two wires just east of the smoking oil switch which he purposed to bridge. He might have cut off this electricity from the point of work by opening the switch or fuse cut-out of the transformer located east of the point where he was to work. Thus without having entirely cut off the electricity from the lines at a point where he was to work, by opening switches on either side of the point of work, without applying ground chains, and without rubber gloves, Kreger grasped the live wires in his hands and was electrocuted. Just previously to grasping the live wire, he had touched with the back of his hand a dead wire in the group of wires at this switch and suffered no ill effects. The company had instructed its electricians, as a last test for electricity in wire upon which they were to work, after cutting out the current on either side of the point of work, to apply the back of the hand rather than the palm before beginning work.

Under these facts, we found there was no negligence on the part of the defendant, but that Kreger assumed the risks of his employment.

The plaintiff urged negligence on the part of the defendant: (1) In teaching the test of live wires with the back of the hand; (2) in failing to equip its lines with air break switches on each side of its oil switches; and (3) in failing to provide its electricians with voltmeters.

[1, 2] None of these alleged acts of neglect was the proximate cause of the death of Kreger. The test with the back of the hand did him no harm; he applied it to the wrong wire. What would have been the result had he applied the back of his hand to the live wire, we do not know. The failure to provide air break switches was not the proximate cause of the injury. Kreger had an effective cut-out switch in the cut-out fuse in the transformer east of the smoking oil switch, and failed to use it. The lack of a voltmeter was not the proximate cause of the death of Kreger; he had a voltmeter applicable to the low-tension wires east of the transformer, and failed to apply it. We therefore concluded, and still hold, that, even if the alleged failure to adopt these precautionary measures were an act of negligence, such failure was not the proximate cause of the death of Kreger. Therefore it was entirely immaterial whether such devices were used or not.

[3, 4] Kreger, as an experienced electrician, could not recover because he assumed the risks of his employment. There is no statute eliminating the defense of assumption of risk applicable to the facts of the case. It is not within the provisions of section 4 of the Federal Employers' Liability Act (45 USCA § 54; Comp. St. § 8660), and therefore the defense of assumption of risk is applicable to the case as a complete bar to the action. Seaboard Air Line ,Ry. v. Horton, 233 U. S. 492, 503, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Jacobs v. Southern Railway Co., 241 U. S. 229, 235, 36 S. Ct. 588, 60 L. Ed. 970. Kreger was experienced; he occupied the position of signal maintainer for three years; he had been in the electric service of the company for seven years; he knew the obvious danger incident to live wires and the handling of them; he sought out and bid in the position he occupied; he undertook to repair and maintain the electric signal wires of the defendant, with full knowledge of the dangers involved; he must be held to have assumed the risk of his employment. There is an almost unbroken line of cases holding that linemen working on electric wires assume the risk of their employment, and no recovery may be had for their death or injury by electrocution. Among the many may be noted People's Tel. Co. v. Conant, 198 F. 624 (7th C. C. A.); Bell Telephone Co. v. Detharding, 148 F. 371 (7th C. C. A.); Co-operant Tel. Co. v. St. Clair, 168 F. 645 (2d Cir. C. C. A.); Chisholm v. New Eng. /Tel. & Tel. Co., 176 Mass. 125, 57 N. E. 383; Pembroke v. Cambridge Electric Light Co., 197 Mass. 477, 84 N. E. 331; Baxter v. Lansing, 190 Mich. 542, 157 N. W. 70; Westinghouse Elec. & Mfg. Co. v. State of Maryland, 129 Md. 59, 98 A. 206; White v. Thomasville Light & Power Co., 151 N. C. 356, 66 S. E. 210; Cumberland Tel. & Tel. Co. v. Magness' Adm'x, 156 Ky. 330, 160 S. W. 1061; Bowers v. Bristol Gas. & Elec. Co., 100 Va. 533, 42 S. E. 296; Carr v. Manchester Elec. Co., 70 N. H. 308, 48 A. 286.

Then, too, there are numerous cases which hold that, where rubber gloves are available to an electric lineman who worked without them, he assumed the risk involved in not wearing them. Bell Tel. Co. v. Detharding, 148 F. 371 (C. C. A. 7th Cir.); Kentucky Public Service Co. v. Morris' Adm'r, 195 Ky. 582, 242 S. W. 599; Junior v. Missouri Electric Light & Power Co., 127 Mo. 79, 29 S. W. 988; Register v. Tidewater Power Co., 165 N. C. 234, 81 S. E. 326.

Plaintiff also contends that a new trial must be granted because the court deprived plaintiff's counsel of his common-law right to examine jurors on their voir dire. This jury was chosen in accordance with the Pennsylvania practice. The list of jurors was drawn for this term of court, and was open for his inspection some weeks before the trial. The plaintiff had and exercised her full right of challenge allowed by statute. Certain questions the court permitted to be asked of the jurors drawn; other questions were refused. Of this the paintiff's counsel is complaining.

[5, 6] We do not conceive that we committed any error in so doing. We believe it to lie within the discretion of the court to determine what questions shall be asked jurors on their voir dire. At any rate, no harm has come to the plaintiff from this manner of selecting a jury, as the jury were given binding instructions to find for the defendant.

Motion for a new trial will be denied.