## FLOYD JOHNSON v. WAVERLY BRICK & COAL COMPANY and MISSOURI PACIFIC RAILWAY COMPANY, Appellants.

### Division One, September 16, 1918.

1. **NEGLIGENCE: Dangerous Place: Coal Chute: Warning.** A "trimmer" engaged in separating stone and other foreign materials from coal as it was being carried from the mine by a "shaker" into a car, in the absence of notice of approaching cars on the switch, was at work in a dangerous place, and the mining company by which he was employed, and the railway company which placed cars on the switch upon request of the mine foreman, are chargeable with knowledge of the danger. Such "trimmer" had a right to assume that the two companies would not imperil his safety by permitting or causing the car on which he was at work to be struck by other cars and moved without notice or warning to him.

2. ———: ———: **Relegating Duty to Another.** If one person owes a duty to another, and instead of performing it himself depends upon a third to discharge it, and said third party neglects it, and as a consequence of such neglect the party to whom the duty was due is injured, the party who owed the duty is liable in damages for the resulting injuries.

3. ———: ———: **Duty Habitually Neglected: Custom.** Neither the coal mining company nor the railroad company, which owed to a "trimmer" at work on a stationary car being loaded at a coal mine the duty to warn him that cars were about to be run in upon the switch, can escape the result of causing or permitting, without warning, cars to be pushed against the car on which he was working, by the fact that either or both of them habitually neglected said duty. No custom or usage can make that lawful which is unnecessarily dangerous.

4. ———: ———: **Question for Jury.** Where the coal mining company owed to an employee the duty to give him notice of the approach of a train on a switchtrack and its collision with the car on

which he was at work, and he testifies that no such notice was given and the foreman testifies that he gave him such notice, the question of whether such notice was given becomes one of fact, to be determined by the jury.

5. ———: Contributory: Seeing Approaching Train. A "trimmer" at work in separating stone from coal on a car standing on a switch at a coal mine, was not guilty of negligence in standing with his back to a train approaching on the switch, if he did not know it was approaching and under the rules of the railway company and of the mining company he had no reason to apprehend that a train would approach without giving him notice.

6. ———: Assumption of Risk: Employer's Negligence. The risks which the employee assumes are those purely incidental to the employmennt, and include such injuries as are liable to occur at any time during the performance of the work in the ordinary and usual way, unaided in any degree by the negligence of the employer.

7. ———: ———: ———: Question for Jury. If the evidence tends to show that the plaintiff's injuries were the result of the negligence of defendants, and not the result of an assumed risk, it presents a question of fact for the jury, and the court cannot declare as a matter of law that plaintiff assumed the risk of the particular injury.

8. INSTRUCTIONS: Conflicting: Not Preserved. Appellants are in no position to complain that the instructions are conflicting if their motion for a new trial complained of no such error.

9. EVIDENCE: Joint Tortfeasors. It is not error to refuse to instruct the jury that the testimony of a witness respecting a conversation with the foreman of the coal company, offered on behalf of the railroad company, should not be considered in determining the issues between the plaintiff and the coal company. The foreman was the coal company's vice-principal, and if his testimony shows that the cars which were run against the car in which plaintiff was working were run at his request, and neither company gave plaintiff the notice which their rules required, the foreman's testimony does not pertain solely to the defense arising out of the issues between plaintiff and the railroad company, but is pertinent to the issue of negligence between plaintiff and the coal company.

10. NEGLIGENCE: Imputed to Joint Tortfeasors: Failure to Give Notice. The negligence of a railway company in failing to give notice to a "trimmer" at work in a car on a switch at a coal mine that a train is about to be run against the car cannot be imputed to the mining company. But if it was the duty of both companies to give such notice, and neither did so, it is not error to refuse to instruct the jury that the failure of the railway company to

give the necessary notice cannot be imputed to the coal company, nor to refuse to instruct them that the failure of the coal company to give such notice cannot be imputed to the railway company. Neither tortfeasor can escape liability for failure to perform its duty to plaintiff by an attempt to make the other's negligence the sole cause of the injury. The failure to give the notice being negligence, all tortfeasors whose duty it was to give it and failed to do so are liable.

11. **VERDICT: Excessive: $15,000.** A verdict for $15,000 for a "trimmer" at a coal mine, whose leg was amputated six inches above the ankle and who also lost the little finger of the right hand, as a result of the injuries done him by defendants, was too large by $5,000.

Appeal from Lafayette Circuit Court.—*Hon. Samuel Davis,* Judge.

AFFIRMED.

*O. L. Rider* for appellant, Waverly Brick & Coal Co.

(1) The court erred in overruling the demurrer of Waverly Brick & Coal Company to plaintiff's evidence. Smith v. G. C. & D. F. Ry. Co., 164 S. W. 132; Martinowsky v. City of Hannibal, 35 Mo. App. 70; Stanley v. Union Depot R. Co., 114 Mo. 606; Myers v. Railway Co., 120 Mo. App. 292; Otrick v. Railway Co., 134 S. W. 668. Livesay v. First Nat. Bank, 86 Pac. (Colo.) 102; 3 Labatt's M. & S. (2 Ed.), sec. 1143; Junior v. Mo. E. L. & P. Co., 127 Mo. 79; Stegmann v. Gerber, 146 Mo. App. 104; Hirsch v. Freund Bros. Bread Co., 150 Mo. App. 162; Clark v. M., K. & T. Ry. Co., 179 Mo. 66; Bailey v. Kansas City, 189 Mo. 503. (2) The court erred in overruling the motion of defendant coal company to instruct the jury as to the application and effect of certain portions of the testimony of the witness Day. State v. Phillips & Ross, 24 Mo. 484; Union Sav. Assn. v. Edwards, 47 Mo. 449; Morrison v. Yancey, 23 Mo. App. 674; Carle v. City of De Soto, 63 Mo. App. 166; Illinois Central Railroad Co. v. Houchins, 89 S. W. 533; Edgerton v. Wolfe, 6 Gray (Mass.), 453; Rachel v. Rachel, 4 La. Ann. 500. (3) The court erred in refusing to give Instruction 1 requested by defendant coal company for a

directed verdict in its favor. Railway Co. v. Bangs, 11 N. W. (Mich.) 276; McCarty v. Hotel Co., 144 Mo. 402; Herbert v. Mound City B. & D. Co., 140 Mo. 433; Robinson v. Packing Co., 171 S. W. 34; Scoffin v. Furniture Co., 171 S. W. 933; Palmer v. Tel. Co., 91 Mo. App. 106; Moore v. Railway Co., 146 Mo. 572.

*James F. Green* and *Harvey C. Clark* for appellant, Mo. Pac. Ry. Co.

(1) Plaintiff's instructions 5 and 6, which purport to cover the whole case are in conflict with instructions 4 and 5 given for the defendant railway company and ignore the defense pleaded by the defendant railway company and the evidence upon which the same are based and conceded to be proper matter of defense in instructions 4 and 5 given at defendant's request. (2) The error in an instruction given for the plaintiff, purporting to cover the entire case, is not cured by other instructions given on behalf of the defendant. State ex rel. Long v. Ellison, 199 S. W. 988; Wojtylak v. Coal Co., 188 Mo. 283; Traylor v. White, 185 Mo. App. 331; Hall v. Coal and Coke Co., 260 Mo. 369; Humphreys v. Railroad, 191 Mo. App. 721; Walker v. White, 192 Mo. App. 19. (3) A verdict of $15,000 under the facts in this case is excessive. Domineck v. Western Coal & Mining Co., 164 S. W. 567; Hollenbeck v. Railroad, 141 Mo. 113; Whalen v. Railroad, 60 Mo. 323; Adams v. Railroad, 100 Mo. 443; Chitty v. Railroad, 166 Mo. 443; Brady v. Railroad, 206 Mo. 509; Norris v. Railroad, 239 Mo. 655. (4) The plaintiff's evidence shows that he was familiar with the custom prevailing at the mine of looking to the vice-principal of the coal company and not to the employees of the railway company for notice when switching was to be done on the coal company's tracks; his statements and conduct on the day of the accident shows that he relied upon this custom, and his negligence in continuing to work on the car with his back in the direction from which a train would approach, in view of the fact that he knew the foreman desired the switch to be made and that he had gone down to

where the train crew was at work, was the sole cause of his injury. If it be negligence in the railway company to fail to give warning of the purpose to move the car on which the plaintiff was at work, notwithstanding the custom in this regard existing at the mine and known to its employees, including the plaintiff, the conduct of the plaintiff constituted such negligence as a matter of law that the case should be taken from the jury, in so far as the defendant railway company is concerned.

*Aull & Aull* for respondent.

(1) The court properly overruled appellant's demurrer to the evidence and submitted the case to the jury. The authorities cited by appellant are not the law. (2) Instructions 4 and 6 for respondent properly declared the law. Hinzeman v. Railroad, 182 Mo. 624; Huhn v. Railroad, 92 Mo. 447; Settle v. Railroad, 127 Mo. 344; Hamman v. Coal Co., 156 Mo. 244; Wendler v. House Furn. Co., 165 Mo.540; Henderson v. Kansas City, 177 Mo. 477; Feldman v. Railroad, 175 Mo. App. 637; Hardwick v. Wabash, 168 S. W. 332; Dunn v. Company, 182 S. W. 113. (3) The verdict was a reasonable and fair verdict under the instructions of the court. Henderson v. Kansas City, 177 Mo. 491; Huhn v. Railroad, 92 Mo. 447; Settle v. Railroad, 127 Mo. 344; Hamman v. Coal Co., 156 Mo. 244; Wendler v. House Furn. Co., 165 Mo. 540. Appellant is not in position to complain. (4) The court properly refused instruction 2 requested by appellant coal company. The coal company, through its manager, was present at the time, urging the crew to shunt the cars in under and beyond the chute. The court properly refused instruction No. 7 requested by defendant coal company. The instruction eliminated all negligence whatever on the part of defendant coal company and required the jury, merely because the railway company crew failed to give warning, to find for defendant coal company. O'Rourke v. Ry. Co., 142 Mo. 351; Applegate v. Railroad, 252 Mo. 175. The motion for a new trial contains no assignment of error sufficient to have the action of the court in giving or refusing instructions reviewed in

this court. K. C. Disinfecting Co. v. Bates Co., 201 S. W. 92; Polski v. St. Louis, 264 Mo. 250; Wampler v. Railroad, 269 Mo. 464; State v. Rowe, 271 Mo. 88; Carver v. Thornhill, 53 Mo. 286; Sweet v. Maupin, 65 Mo. 68; R. S. Mo. 1909, sec. 2025; R. S. Mo. 1909, sec. 1841. "Wherever a person should reasonably apprehend that as the natural and probable consequences of his act or neglect another will be placed in a situation of danger of receiving injury, a duty of exercising due care to prevent such injury arises. And if the injury results from the failure to use such care a liability to the person injured exists." Railroad v. Snyder, 55 Ohio St. 361; Ella v. Boyce, 70 N. W. 1106; Lippert v. Company, Fed. 942; Van Winkle v. Company, 19 Atl. 472; Moon v. Railroad, 46 Minn. 109; Burkhart v. Schoot, 74 S. W. 430; Roddy v. Railroad, 104 Mo. 234; Geismann v. Electric Co., 173 Mo. 654; Young v. Oil Co., 185 Mo. 641.

WOODSON, J.—The plaintiff brought this suit in the circuit court of Lafayette County against the defendants to recover $30,000 damages for personal injuries received through their alleged joint negligence. The trial resulted in a judgment against both defendants for the sum of $15,000 and after moving unsuccessfully for a new trial both defendants appealed the cause to this court.

The defendant, Waverly Brick & Coal Company (which, for brevity, will hereinafter be called the Coal Company) was engaged in mining, loading, shipping and selling coal; the defendant Railway Company was a common carrier, engaged in the transporting of coal and other freight to and from Waverly to and from other points in the State, and the plaintiff was an employee of the Coal Company, engaged in trimming cars, that is, standing on the cars while they are being loaded and separating stone and other foreign materials from the coal as it passed into the cars, and trimming them up neatly as they were being loaded.

When the cars were to be loaded they were placed on a side switch of said Railway Company at a chute

at said mine, at which there were three tracks on which cars might be placed for the purpose of loading, and the coal was carried up from the mines and dropped into a shaker which carried the same to the car being loaded, and at the end of the shaker there was an apron extending to near the middle of the car for the purpose of distributing the coal in the car. The main line of the Railway Company passed north of the chute, and the three side tracks branched off from the main line about a quarter of a mile therefrom and ran north and east of the chute, which made a large curve, and on the concave side thereof there was a high bluff, which prevented one working at the chute from seeing a car as it approached the same until it reached the point beyond the switch numbered three, a distance of about 180 feet.

At the time plaintiff was injured he was standing with his back to the north, with his left hand resting on the shaker.

The plaintiff was an experienced man in the business, having worked for the Coal Company for years and was perfectly familiar with the method of loading, switching and handling the cars about the chute.

The uncontradicted evidence of all parties showed that it was the custom in moving the cars to be loaded, or after they had been loaded, for the foreman or some other employer in charge of the mines to advise the Railway Company what cars it was desired should be moved, and that such foreman would then notify the person engaged in trimming the cars what was to be done, so he could look out for his own safety; the record also shows that it was not the custom of the Railway Company to notify the employees of the Coal Company of the intention to move the cars about the chute. This custom was known to and acquiesced in by the plaintiff and other employees of the latter company.

The plaintiff's evidence tended to show that on the morning of the accident, Robert Moss, who was in charge of the mines and employees of the Coal Com-

pany, told plaintiff to go down to the train crew when the local came in and ask them to set in some cars on the switch, which would necessitate moving the car on which the plaintiff was at work under the chute as a trimmer. That in pursuance to the instructions of Mr. Moss, plaintiff saw the train crew, but was advised by them that they would not be able to do the switching that morning. He then went back to work on his car, and while there engaged, Moss came to him and asked if his message had been delivered. The plaintiff gave him the reply made by the crew. Moss says that he told the plaintiff to prepare for a switch, and that he would go down and see what he could do with the train crew. The plaintiff denies this statement of Moss, but says that after he told Moss what the train crew said, Moss went down the track to where the crew was switching near the main track. He continued to work on the car. Moss continued on down the track to where the train crew was at work and asked them if they could not set in the desired cars. The foreman asked him if it could be done immediately. Moss told him it could; the foreman said alright and signaled the train, which was slowly backing in his direction, to go on back. The train continued to back slowly south toward the shaft, and after picking up two cars between the chute and the train, backed on against the car upon which the plaintiff was at work. When these cars struck the car under the chute, the movement threw the plaintiff from the top of the car under the wheels, and he sustained the injuries of which he complains. Moss, after telling the train crew that it would be all right to back on down and make the switch, did not make any effort to warn the plaintiff. He says that having told the plaintiff what he intended to do, he presumed that he would be on the lookout. Plaintiff testified that not hearing what Moss said to him about going on down and having the switch made, he gave the matter no further thought.

276 Mo.—4]

As a result of his injury, it became necessary to amputate the right foot of the plaintiff six inches above the ankle, as well as the little finger on his right hand.

The Coal Company introduced no evidence except Rule 379 of the Railway Company, which was in force at the time the injury occurred. It reads as follows:

"In switching at stations and in yards where it is necessary to disturb cars that are being loaded or unloaded, great care must be taken to warn all persons in the vicinity of the same and opportunity given them to get away from the cars and out of danger before the cars are moved.

"When cars are so moved they must be returned to the same position found."

At the close of the plaintiff's case, counsel for the defendants asked and the court refused a demurrer to the evidence.

Such other facts as may be necessary for the proper disposition of the case will be stated in the opinion.

I. It is first insisted by counsel for the defendants that the trial court erred in refusing their demurrer to the evidence.

The evidence clearly shows that the place where the plaintiff was working, in the absence of notice to him of the approaching train, was dangerous, and that each of the defendants knew of that danger and adopted means to obviate it. All the authorities recognize such places as being dangerous. Moore v. Wabash, St. Louis & Pacific Ry. Co., 85 Mo. 588; Koerner v. St. Louis Car Co., 209 Mo. 141.

**Dangerous Place: Notice.**

And the plaintiff had the right to assume that the defendants would not imperil his safety by permitting or causing the car on which he was at work to be struck by other cars and moved without notice or warning to him. Young v. Lusk, 268 Mo. l. c. 639; Williams v. Wabash Ry. Co., 175 S. W. 900; Koerner v. St. Louis Car Company, 209 Mo. 141; Kame v. Railroad, 254 Mo. 175; Peppers v. Plate Glass Co., 165 Mo. App. 556; Anderson v.

Ry. Co., 196 Mo. 442; Porter v. Stock Yards Co., 213 Mo. 372; Kettlehake v. Car & Foundry Co., 171 Mo. App. 528, l. c. 541; Hutchinson v. Safety Gate Co., 247 Mo. l. c. 94; Erickson v. Railroad, 171 Mo. l. c. 659; George v. Railroad, 225 Mo. l. c. 405; Charlton v. Railroad, 200 Mo. 413; Crawford v. Stockyards Co., 215 Mo. l. c. 414; Clark v. Railroad, 234 Mo. 396; Clark v. Iron & Foundry Co., 234 Mo. 436.]

The Coal Company, in order to prevent injury to its employees engaged in such work, undertook to notify them when any car they were on was to be moved, and the Railway Company adopted the rule read in evidence designed to accomplish the same end. It is conceded that the Railway Company did not perform this duty to the plaintiff, nor to any other of its employees working about this chute, but depended upon the Coal Company to discharge that duty for both of them.

The law is well settled that if one person owes a duty to another, and instead of performing that duty himself, depends upon a third party to discharge it for him, and that party neglects to so do, and the person to whom the duty was due is injured in consequence of said neglect, then the party who owed the duty is liable in damages for the injury resulting therefrom. This is elementary. [Neff v. City of Cameron, 213 Mo. 350; Berry v. Railroad, 214 Mo. 593; O'Rourke v. Lindell Ry. Co., 142 Mo. 342; Applegate v. Railroad, 252 Mo. 173; Benton v. St. Louis, 248 Mo. 98.]

Nor can the defendants, or either of them, escape the result of causing or permitting cars to be pushed against the car upon which the plaintiff was working, without warning, by showing that they or either of them habitually neglected to do so. This is upon the principle that no custom or usage can make that lawful which is unnecessarily dangerous; and no one will say that to push cars back against the one on which the plaintiff was at work without warning was not unnecessarily dangerous. [Indermaur v. Dames, L. R. 1 C. P. l. c. 274; Reichla v. Gruensfelder, 52 Mo. App. l. c. 60;

Dawson v. Ry. Co., 114 Fed. l. c. 872; 26 Cyc. pp. 1108-9 and cases cited; Hosic v. Railroad, 75 Iowa, 683; Hamilton v. R. R. Co., 36 Iowa, 31; Wendler v. People's House Furnishing Co., 165 Mo. 536-7; Settle v. St. L. & S. F. Railroad, 127 Mo. 336; Pauck v. St. Louis Beef & Provision Co., 159 Mo. 467.]

Under this principle of law the Railway Company cannot escape liability unless the Coal Company performed the duty mentioned for it, that is, notified the plaintiff of the approaching train, which if done, would have enured to both defendants. Under this view of the case, it becomes important to inquire as to whether or not the Coal Company performed this duty.

The plaintiff testified positively that Moss, the foreman of the Coal Company, did not so notify him, while Moss does not say positively that he did, but testified that he told the plaintiff to prepare for a switch, and that he would go down and see what he could do with the crew; this the plaintiff denies.

This evidence presented a question of fact for the jury which the court properly submitted to them for determination; and, therefore, the demurrer as to each of the defendants was properly refused. For the same reason, the court properly gave instruction numbered 2 for the plaintiff, submitting that question to the jury.

II. It is next insisted by counsel for defendants that the evidence showed that the plaintiff was guilty of such contributory negligence, as to prevent a recovery as a matter of law, by standing with his back to the approaching train so he could not see it. This insistence is untenable. The evidence shows the plaintiff did not know that the train was approaching and under the rules of the Railway Company and the custom of the Coal Company, he had no reason to apprehend a train would approach him without notice first being given to him.

Contributory Negligence.

This point is ruled against the defendants.

III. Counsel for defendants also insist that the plaintiff is not entitled to a recovery in this case because his injury was the result of a risk incident to his employment, that is, he assumed all risks incident to his employment, and that his liability to be knocked off of the car mentioned and being injured was one of those risks.

Assumption of Risks.

This insistence is untenable for two reasons. First, because this was not a risk incident to his employment. Such risks are purely incidental to the employment, and is such an injury as is liable to occur at any time during the performance of the work undertaken, unaided in any degree by the negligence of the employer. For instance, should Jones employ Brown as a blacksmith, it would be the duty of the former to furnish the latter with reasonably safe tools or appliances with which to do that work, and it would be the duty of the latter, among other things, to weld iron, and in order to do that it would be necessary for him to heat the ends of the two pieces of iron to almost a white heat, and place them in contact with each other and hammer them together, and as a necessary incident thereto hot scales and sparks will fly therefrom, which would be liable to strike him in the eye and destroy the sight thereof; such a liability would be a risk incident to the work undertaken, in which the employer would have had no part, and which the employee assumed as an implied part of his contract of employment, and for such an injury he could not recover damages from his employer for the reason he assumed the risk. But suppose upon the other hand the injury had occurred to his eye by reason of a sliver of steel flying from a defective and dangerous hammer negligently furnished by the employer while he was pounding the iron mentioned. Such injury would be the result of negligence of the employer. [Williams v. Pryor, 200 S. W. 53.] In no sense of the word, would such an injury be the result of a risk assumed as an incident of the employment; it would have no element of assumption of risk in it, and in the absence of contributory negligence he could recover damages of the employer for the

injury so sustained, provided, of course, his own negligence did not contribute thereto. But, as suggested, the plaintiff might not be entitled to a recovery in such a case, even though he did not assume the risk. If his negligence should contribute to the injury it would be as effectual in barring a recovery as if it had contributed to that of the employer in producing it. To illustrate: Suppose he knew the defective and dangerous condition the hammer was in, and that it would in all probability inflict injury upon him if he should use it, but notwithstanding such knowledge he should use it and should be injured thereby. Under such conditions he could not recover, but not on account of the assumption of the risk, but on account of his contributory negligence.

While on this subject I might add that the risk which is assumed by the employee, which is done by implication, which arises out of and constituting a part of the contract of employment, is liable to cause injury at any time, as an incident to the performance of his duties to the employer, wholly independent of any act on the part of the employer. In other words, a risk assumed by the employee is incident to the performance of the work and is one that is liable to inflict injury upon him while performing his duties to the employer in the ordinary and usual manner, without the interference or negligence of the latter; but where the latter's negligence causes the injury the assumption of risk vanishes.

The second reason before suggested why this insistence is untenable is that the evidence tended to show that it was the negligence of the defendants which caused the injury, and not the result of an assumed risk. The evidence presented a question of fact for the jury, and the court properly submitted it to them.

For the reasons stated this insistence is ruled a-against the defendants.

IV. Counsel for the Railway Company contend that instructions numbered 5 and 6 given by the court for the

*Instructions.*    plaintiff are in conflict with instructions numbered 4 and 5 given by the court for that company.

Should it be conceded that they are in conflict, and that the conflict was injurious to the Railway Company, yet it is in no position to urge that error here, for the reason that the motion for a new trial complains of no such error; it is perfectly silent on that subject. [Secs. 1841 and 2081, R. S. 1909; Matthews v. Central Coal & Coke Co., 177 S. W. 650, l. c. 653; Kansas City Disinfecting & Mfg. Co. v. Bates County, 201 S. W. 92; Polski v. St. Louis, 264 Mo. 458; Wampler v. Atchison, Topeka & Santa Fe Railway Co., 269 Mo. 464; State v. Rowe and Sanders, 271 Mo. 88; Carver & Carver v. Thornhill, 53 Mo. l. c. 286; Sweet v. Maupin, 65 Mo. l. c. 68.]

V. Counsel for the Coal Company insist that the court erred in refusing its motion to instruct the jury that the testimony of the witness Day respecting the conversation with Moss, offered on behalf of *Evidence.*   the defendant Missouri Pacific Railway Company, should not be considered by the jury in determining the issues between the plaintiff and the Waverly Brick & Coal Company, but that the same pertains solely to the defense arising out of the issues between the plaintiff and Missouri Pacific Railway Company.

There was no error in this refusal. Moss was the foreman of the Coal Company, and what he said at the time to the employers of the Railway Company about moving the cars mentioned was clearly admissible. He was the vice-principal of the Coal Company, and his testimony shows why and how the cars were moved and how the plaintiff came to be injured.

This point is ruled against the Coal Company.

VI. Counsel for the Coal Company also insist that the court erred in giving instructions numbered 4 and 6 for the plaintiff.

Counsel do not point to any error·in either of those instructions, but simply says that "the court erred in giving to the jury instruction No. 4 requested by the plaintiff." Then follows the exact language regarding instruction No. 6.

Instructions.

We have carefully read both of these instructions and we find no error in either of them; they follow the pleadings and are hypothesized upon the evidence introduced, which we have heretofore, in paragraph one of this opinion, held was sufficient to carry the case to the jury.

According to the following cases the evidence established the negligence of the defendants, and the instructions properly submitted the case to the jury. [Edington v. Railroad, 204 Mo. 1. c. 67; Frankel v. Hudson, 271 Mo. 1. c. 503; Applegate v. Railroad, 252 Mo. 1. c. 188; Young v. Lusk, 268 Mo. 1. c. 639; Williams v. Wabash Ry., 175 S. W. 900; Penney v. Stock Yards Co., 212 Mo. 1. c. 328; Kame v. Railroad, 254 Mo. 1. c. 196; Bolton v. Railroad, 172 Mo. 98; George v. Railroad, 225 Mo. 364; Charlton v. Railroad, 200 Mo. 1. c. 433; Hutchinson v. Safety Gate Co., 247· Mo. 78; Koerner v. St. Louis Car Co., 209 Mo. 141; Curtis v. McNair, 173 Mo. 270; Clark v. Railroad, 234 Mo. 396; Clark v. Iron & Foundry Co., 234 Mo. 436; Baker v. Railroad, 147 Mo. 1. c. 158; Taber v. Ry. Co., 186 S. W. 1. c. 692; Sykes v. Ry. Co., 178 Mo. 1. c. 712; Edington v. Railroad, 204 Mo. 61; Burkard v. Rope Co., 217 Mo. 481; Glaser v. Rothschild, 221 Mo. 1. c. 186; Young v. Waters-Pierce Oil Co., 185 Mo. 634; O'Mellia v. Ry. Co., 115 Mo. 1. c. 220; Settle v. Ry. Co., 127 Mo. 1. c, 342; Pauck v. St. Louis Beef & Provision Co., 159 Mo. 1. c. 475-477-8.]

For the reasons stated we are of the opinion that the court properly gave said instructions.

VII. Counsel for the Coal Company next insist that the court erred in refusing instruction number 7 requested by it, which reads:

"If you believe from the evidence that the defendant railway company had in force at the time of this accident a rule which required all its switching crews before making a switch at stations and in yards where

Refused Instruction.

it was necessary to disturb cars that were being loaded or unloaded to first give warning to all persons in the vicinity of the same of their intention to make such switch, and give them opportunity to get away from cars and out of danger before the cars were moved, and if you further believe that on the morning in question they made a switch into the yard of the defendant coal company, who were working on or about the cars that were to be removed, to get out of danger, then you are instructed that the failure of said crew to give such warning cannot be imputed to the defendant coal company, and your verdict must be in favor of said Waverly Brick & Coal Company."

This instruction was properly refused, notwithstanding the fact that the negligence of the Railway Company could not be imputed to the Coal Company. The mere fact that the former may have neglected to give the notice to the plaintiff in no sense excused the latter from doing so. It owed the plaintiff the same duty the Railway Company owed him, and under the law it had no authority to delegate that duty to some one else. We decided the same question against the Railway Company in paragraph one of this opinion, where it attempted to unload the burden of its sins upon the Coal Company because the latter had been in the habit of warning its employees of the intended movement of cars about the chute. Now it is trying to retaliate by showing that the former did not observe the rule read in evidence. This cannot be done. We, therefore, think the court correctly refused said instruction.

VIII. It is finally insisted that the verdict of the jury is excessive and should be reduced. After a care-

**Excessive Verdict.** ful consideration of the record, we are of the opinion that this insistence has merit in it. It is true that plaintiff's right leg was amputated some six inches above the ankle, and he also lost the little finger of the right hand. Of course, both of these injuries are permanent and disfigure the plaintiff, and will materially affect his earning capacity in the future; nevertheless we are of the opinion that $15,000 is excessive for these injuries when viewed in the light of former adjudications of this court. [Domineck v. Western Coal and Mining Co., 164 S. W. 567; Lessenden v. Mo. Pac. Ry. Co., 238 Mo. 247; Brady v. K. C., St. L. & C. Railroad, 206 Mo. 509; Whalen v. St. L., K. C. & N. Ry. Co., 60 Mo. 323.]

We are, therefore of the opinion that the judgment should be reversed and the cause remanded on the ground that the verdict is excessive, unless the plaintiff will remit $5000 of the judgment as of the date thereof, within ten days from this date.

If that is done, the judgment will stand affirmed for $10,000 and the interest from date of the original rendition thereof. All of the judges concur; *Bond, J.,* in result.

CASES ARGUED AND DETERMINED

BY THE

# SUPREME  COURT

OF THE

## STATE OF MISSOURI

AT THE

## OCTOBER TERM, 1918.