**JOHNS-MANVILLE, Inc., v. POCKER.**

Circuit Court of Appeals, Eighth Circuit.
May 4, 1928.

No. 7837.

1. **Master and servant** ⬤⇒286(3)—**Employer's negligence in furnishing employee, injured when wire recoiled when cut, insufficient light held not for jury under evidence.**

In action by employee for personal injury sustained when end of wire which he cut recoiled and hit him in eye while he was engaged in putting asbestos covering on steam pipes, negligence of employer in furnishing insufficient light *held* not for jury under evidence.

2. **Negligence** ⬤⇒56(1), 59—**Causal connection must be shown between breach of duty and injury to plaintiff, and that like injury could have been anticipated by reasonably prudent person.**

In order for plaintiff to recover for injury, there must be shown causal connection between breach of duty and injury to plaintiff, and it must be further shown that like injury due to alleged negligence could have been anticipated by a reasonably prudent person.

3. **Master and servant** ⬤⇒129(1)—**Unstable platform, imperfect light, and particular kind of wire held not proximate cause of injury to employee, where wire recoiled when cut.**

Unstable platform, on which employee was required to work, imperfect light, and particular kind of wire, which recoiled when cut and hit employee in eye, *held* not proximate cause of injury to employee's eye, while he was engaged in putting an asbestos covering over steam pipes.

4. **Negligence** ⬤⇒136(25)—**Where there is no substantial evidence on which to base finding for plaintiff on question of proximate cause, court should instruct for defendant.**

Although question of proximate cause is ordinarily one for jury, where there is no substantial evidence in record on which to base finding on question in favor of plaintiff, court should instruct verdict for defendant.

5. **Master and servant** ⬤⇒238(3)—**Employee, choosing unsafe method of cutting wire which recoiled, striking him in eye, held guilty of contributory negligence.**

Where employee, engaged in putting an asbestos covering over steam pipes, could have held wire so that there would have been no recoil, but chose unsafe method of cutting wire, so that it recoiled and struck him in eye, he was guilty of contributory negligence, and could not recover for injury.

In Error to the District Court of the United States for the Western District of Missouri; Albert L. Reeves, Judge.

Action by Mike Pocker against Johns-Manville, Inc. Judgment for plaintiff, and defendant brings error. Reversed, and new trial granted.

Carl L. Crocker, of Kansas City, Mo. (Merritt U. Hayden, of Detroit, Mich., and Roy B. Thomson and Ryland, Boys, Stinson, Mag & Thomson, all of Kansas City, Mo., on the brief), for plaintiff in error.

W. W. McCanles, of Kansas City, Mo., for defendant in error.

Before WALTER H. SANBORN and BOOTH, Circuit Judges, and MUNGER, District Judge.

BOOTH, Circuit Judge. This is a writ of error to a judgment in damages after verdict in favor of defendant in error, plaintiff below, in a personal injury suit. The case was originally commenced in the state circuit

court of Jackson county, Missouri, but was removed on the ground of diversity of citizenship and requisite amount involved. Undisputed facts are as follows:

Plaintiff was in the employ of defendant and at the time of the accident was engaged in putting an asbestos covering over steam pipes in the plant of the Springfield Gas & Electric Company in Springfield, Mo. While at his work, plaintiff stood upon a narrow platform about 20 feet above the floor of the building. He had with him on the platform a coil of wire. This was used by him to wind around and hold in place the asbestos covering on the pipes. He had been engaged at this kind of work about 2½ weeks, and on this particular platform 2 or 3 days. At the time of the accident he was in the act of cutting a piece of wire off the coil, when the end of the wire which had just been cut, recoiled and hit him in the eye, causing the injury complained of.

The acts of negligence on the part of the defendant which plaintiff alleged caused the injury, were as follows: (1) Failure to furnish plaintiff a safe place in which to work. (2) Furnishing unsafe wire with which to work. (3) Failure to notify plaintiff that the kind of wire furnished had been changed from copper or galvanized to steel. (4) Failure to warn plaintiff of the danger that the wire was likely to recoil and injure him, though defendant was aware of the danger. (5) Failure to furnish reasonably sufficient light for plaintiff to do his work. (6) Allowing steam to come from an ash pit located below the place where plaintiff was working, and to obscure plaintiff's vision. (7) Failure to furnish sufficient room in which plaintiff could do his work. (8) Compelling plaintiff to work in a cramped position. (9) Furnishing plaintiff a loose and unsteady scaffold or platform on which to work.

The seventh and eighth items of negligence were eliminated by the court in its charge to the jury. It will be observed that the remaining charges of negligence group themselves as follows: 2, 3, and 4, with the wire; 1, 5, and 6, with the light; 1 and 9, with the scaffold or platform.

We shall take these matters up in reverse order. The platform or scaffold was made up of two boards, about 12 feet long, 8 or 10 inches broad, and 2 inches thick, placed side by side and resting upon timbers 2 inches by 4 inches, placed one near each end of the planks. The timbers in turn rested upon and across some of the steam pipes. The planks were not nailed or fastened to the crosspieces, nor were the latter fastened to the pipes.

There was evidence tending to show that the platform thus constructed, while sufficiently strong, was somewhat unsteady.

[1] As to the light: There was evidence tending to show that plaintiff at the time of the accident was working at a place in the room where most of the natural light from the windows was cut off by one of the boilers; that two small electric lights hung about 8 or 10 feet above his head. There was also evidence tending to show that at times ashes from the boilers would drop automatically into the ash pit, which contained water, and that this would cause steam to be formed, which would rise and obscure plaintiff's vision. The evidence further showed, however, that, when this occurred, plaintiff momentarily stopped work. There was evidence that this method of construction and operation of the boilers was a modern and approved method. There was further evidence that other workmen at or near plaintiff's place of work found the light sufficient. In our opinion there was no substantial evidence to sustain the charge of negligence of furnishing insufficient light, and this item should not have been submitted to the jury.

As to the wire: The charges of negligence here are (a) that the wire was unsafe; (b) that there had been an abrupt change in the kind of wire furnished, from one having little or no recoil to one having pronounced recoil; (c) that no notice had been given plaintiff of the change. The original complaint said nothing about the character of the wire. The amended complaint, filed about 11 months later, alleged that always prior to the time of the accident plaintiff had been furnished with copper or galvanized wire, but just prior to the time of the accident he was furnished with steel wire. The testimony, however, failed to sustain these allegations. There was no proof whatever that copper wire had ever been furnished. Plaintiff testified that the wire was supposed to be annealed wire. The only testimony as to change in the character of the wire was by plaintiff, who testified that the wire furnished to him on the afternoon of the accident was harder than the wire used previously; and he testified, further, that the reason he knew it was harder was because, when he cut off a piece, one end flew up, which had not happened before. There was also testimony that sometimes the wire would vary in stiffness, though supposed to be uniform. On the other hand, there was testimony showing that the wire was furnished by defendant from its warehouse; that it was suitable for the purpose for which it was used; that it was

purchased of a leading reputable dealer; that there had been no change in the kind of wire furnished plaintiff; that the wire was uniform, except that there might be a variation of one-half a gauge difference in size, although it was all supposed to be the same; that it was galvanized annealed wire.

In view of all of the testimony relative to wire, we think that the allegations of the amended complaint that the wire was unsafe, and that there had been a change in the kind and character of the wire furnished to plaintiff, are without substantial support, and that the trial court might well have declined to submit these charges to the jury. But, even though it be conceded that there was negligence on the part of defendant in not furnishing a better platform, in not furnishing better light, in not furnishing wire of greater uniformity, still we think that there was a failure to show that such negligence was the proximate cause of plaintiff's injury.

[2] The law relative to proximate cause has been so often examined and analyzed by this court that a very brief review will suffice at this time. There must be shown a causal connection between the breach of duty and the injury to plaintiff (Lang v. N. Y. C. R. Co., 255 U. S. 455, 459, 41 S. Ct. 381, 65 L. Ed. 729); and it must be further shown "that a like injury due to the alleged negligence could have been anticipated by a reasonably prudent person" (C. & N. W. Ry. Co. v. Payne [C. C. A.] 8 F.(2d) 332). In Cole v. German Sav. & Loan Soc., 124 F. 113, 115, this court, speaking by Circuit Judge Sanborn, said:

"An injury that is the natural and probable consequence of an act of negligence is actionable, and such an act is the proximate cause of the injury. But an injury which could not have been foreseen nor reasonably anticipated as the probable result of an act of negligence is not actionable, and such an act is either the remote cause, or no cause whatever, of the injury. An injury that results from an act of negligence, but that could not have been foreseen or reasonably anticipated as its probable consequence, and that would not have resulted from it, had not the interposition of some new and independent cause interrupted the natural sequence of events, turned aside their course, and produced it, is not actionable. Such an act of negligence is the remote, and the independent intervening cause is the proximate, cause of the injury. A natural consequence of an act is the consequence which ordinarily follows it—the result which may be reasonably anticipated from it. A probable consequence is one that is more likely to follow its supposed cause than it is to fail to follow it."

In C., St. P., M. & O. Ry. Co. v. Elliott, 55 F. 949, 951, 952, 20 L. R. A. 582, this court, speaking by the same judge, said:

"An injury that is the natural and probable consequence of an act of negligence is actionable. But an injury that could not have been foreseen or reasonably anticipated as the probable result of the negligence is not actionable, nor is an injury that is not the natural consequence of the negligence complained of, and would not have resulted from it, but for the interposition of some new, independent cause, that could not have been anticipated. Obviously, the relations of causes to their effects differ so widely, and are so various, that no fixed line can be drawn, that will in each case divide the proximate from the remote cause. The best that can be done is to carefully apply the rule of law to the circumstances of each case as it arises."

See, also, American Bridge Co. v. Seeds (C. C. A.) 144 F. 605, 11 L. R. A. (N. S.) 1041; M. & St. P. R. Co. v. Kellogg, 94 U. S. 469, 24 L. Ed. 256.

In the recent case of Davis v. Schroeder, 291 F. 47, 50, 51, Judge Kenyon, of this court, after reviewing the foregoing cases and many others, said:

"From these citations the clear rule is apparent that an injury that could not have been reasonably anticipated by a person of ordinary prudence and intelligence as the probable result of the act of negligence is not actionable; nor is such injury actionable if it would not have resulted from the alleged negligence, but for the interposition of some new and independent cause that could not have been reasonably anticipated."

With these principles in mind, let us turn again to the case at bar. Counsel for plaintiff states his position as follows:

"It might have been reasonably foreseen or anticipated that, in attempting to cut a piece of wire from the roll, on account of insufficiency of light and the shaky and insecure platform, the plaintiff would cut the second or third round of wire, and that, if he did so, the wire, being springy and reasonably likely to fly, might and could come in contact with some portion of his body and reasonably cause him injury. In this case there was no intervening agent which caused the plaintiff's injury. There was not an intervening or remote cause. The direct cause of his injury was the cutting of the second strand of wire. The cutting of the second strand of wire resulted directly from the ab-

sence of sufficient light and a tottery platform."

[3] This statement of counsel fails to mention one all-important matter, which in our opinion was the real and proximate cause of the accident. We refer to the manner in which plaintiff undertook to cut off the piece of wire from the coil. Neither in the original complaint, nor in the amended complaint, is there any allegation that plaintiff cut off a longer piece of wire than he intended. The fair inference, both from the original complaint and the amended complaint, is that he intended to cut off about 6 feet of wire. On the trial, however, which occurred about a year after the filing of the amended complaint, plaintiff testified that he did not intend to cut off a piece of wire 6 feet long, but of a considerably shorter length. Whatever the fact may be as to the length of the wire which plaintiff intended to cut off, his method of cutting it, as gathered from his testimony, and as demonstrated conclusively from what happened, was this: The coil of wire lay upon the platform. Plaintiff reached down, took hold of one end of the wire, and lifted it up away from the coil. He did not state, and we do not know, the distance to which the end was lifted. But, whatever the distance, when plaintiff cut the wire at a point down near the plane of the coil, the cut end of the piece he was holding naturally and inevitably sought the plane of the other end, which plaintiff had in his hand. The natural recoil of the wire would produce this action. That the wire had some recoil is demonstrated by the accident; that this quality existed in the wire would have been plainly apparent to any one immediately on lifting one end of the wire, as plaintiff did.

Neither the imperfect light, nor the steam in the air, nor the unstable platform, nor all three combined, were the cause of the accident. Plaintiff himself caused the accident by holding up one end of the wire and then cutting the wire down near the coil. Whether, if plaintiff had cut off a somewhat shorter piece of wire, the recoil would have been sufficient to bring the cut end up to his eye, is a matter of speculation. It would depend somewhat upon the height at which he held the end in his hand, and upon the nearness of his eye to that particular height. It was the method adopted, and not the exact length of wire cut, which was the cause of the accident. The method adopted was a negligent one, and in our opinion was not one which defendant or an ordinarily prudent person might reasonably have anticipated would be adopted. Our conclusion is that the unstable platform, the imperfect light, and the particular kind of wire, whether taken singly or together, were not the proximate cause of the accident.

[4] Ordinarily the question of proximate cause is one for the jury, but where, as here, there was no substantial evidence in the record upon which to base a finding upon this question in favor of plaintiff, the court should instruct a verdict for defendant. Goodlander Mill Co. v. Standard Oil Co. (C. C. A.) 63 F. 400, 27 L. R. A. 583; Brady v. Railway Co., 114 F. 100 (C. C. A. 8), 57 L. R. A. 712; Cole v. German Sav. & Loan Soc., supra; Teis v. Smuggler Mining Co., 158 F. 260 (C. C. A. 8), 15 L. R. A. (N. S.) 893; Davis v. Schroeder, supra.

[5] There is another reason, in our opinion, why plaintiff, on the record presented, was not entitled to recover. He was guilty of contributory negligence which caused the accident. It was unnecessary for him to lift the end of the wire which he took in his hand to any substantial distance from the coil; or, if it was convenient to lift it, in order to measure with his eye the length to be cut, it was feasible for him then to slip his hand to the point where the wire was to be cut, and hold that end of the wire. There could have been then no recoil.

We have here a case where there was a safe and an unsafe method of doing the work, both of them plainly apparent. Plaintiff chose the unsafe one. He, therefore, cannot recover. Morris v. Duluth, S. S. & A. Ry. Co., 108 F. 747 (C. C. A. 8); Dawson v. C., R. I. & P. Ry. Co., 114 F. 870, 872 (C. C. A. 8); Gilbert v. B., C. R. & N. R. Co., 128 F. 529, 534 (C. C. A. 8); American Linseed Co. v. Heins, 141 F. 45, 49 (C. C. A. 8); St. L., K. C. & C. R. Co. v. Conway, 156 F. 234, 240 (C. C. A. 8); H. D. Williams Cooperage Co. v. Headrick, 159 F. 680, 683 (C. C. A. 8); Powell v. Wis. Cent. R. Co., 159 F. 864, 867 (C. C. A. 8).

Inasmuch as the foregoing considerations dispose of the case, we deem it unnecessary to discuss other questions raised by the assignment of errors. The judgment must be reversed, and a new trial granted.

It is so ordered.