## BORDE v. NEW ORLEANS & G. N. R. CO.
### No. 964.

Court of Appeal of Louisiana, First Circuit.

May 3, 1932.

Carter & Carter, of Franklinton, for appellant.

Ott & Johnson, of Franklinton, for appellee.

MOUTON, J.

In this case the district judge rendered the following opinion:

"On December 9, 1929, while working for the defendant in the capacity of a car repairer, the plaintiff received an injury to his eye which injury necessitated the removal of the eye on the 11th of January, 1930. Plaintiff filed a suit in this court claiming compensation under the workmen's compensation law of Louisiana which suit bears the docket number 5733. That suit was dismissed by judgment of this court on the ground that at the time of the injury plaintiff was engaged in interstate commerce and therefore the compensation law of the State did not apply, but reserved his rights to bring an action under the Federal Employers' Liability Act (45 USCA §§ 51–59). The present suit is based on the latter act.

"Plaintiff avers that at the time of the injury he was working on the brake shaft of a railroad car in the yards of the defendant company at Bogalusa, Louisiana, which car had been side-tracked on rip track #9 for repairs. He alleges that the injury was caused by particles of rust flying off of the nut holding the brake shaft in place, when he used his hammer and chisel to loosen the nut in order to remove the shaft for repairs. He alleges that the car on which he was working was engaged in interstate commerce at the time of the injury as determined in the previous suit. He alleges that the injury was caused by the failure of the defendant company to furnish him with a safe place in which to work, or safe tools and equipment with which to work, or any protection for his eye to keep the rust particles from flying off and injuring the eye. Defendant admits that plaintiff sustained the injury complained of while working on a freight car engaged in interstate commerce, but denies that it failed to furnish a safe place to work or proper tools with which to work, and avers that plaintiff was afforded a reasonable and safe place to work, and was working with simple tools, not dangerous in themselves, and further that defendant made available to plaintiff all necessary protection to his eye, had he used them; that plaintiff had been in the employ of defendant for a long time and was an experienced car repairer, and had full knowledge of the nature of the work and the ordinary dangers attendant thereon; that plaintiff assumed the risk of his employment, and was negligent in failing to use the protection provided by defendant against the risks and dangers of the employment.

"In addition to the admitted facts and allegations, a reading of the testimony justifies, in my opinion, the following finding of fact:

"(1). The place at which plaintiff was working when injured was the top of an ordinary freight box car, standing on a platform, leaning over the brake shaft which projected some twelve inches above the level of the top of the car. This was the usual and customary method of removing the brake shaft, and it is not shown that any other or better means could have been reasonably furnished by defendant company on which to do this kind of work.

"(2). Plaintiff had been working for defendant company for over twenty years as car repairer, more or less regularly, and during that time had not used goggles or any other form of protection for his eyes from rust or foreign particles.

"(3). Using a hammer and chisel to loosen the nut on the brake wheel was a common and usual method employed by the car repairers in doing this part of their work, and the hammer and chisel being used by plaintiff at the time was of the usual kind and contained no defects in themselves.

"(4). Prior to the injury received by plaintiff, the defendant company had not required the car repairers working out on the yards to use goggles to protect their eyes, but did require all their employees to use goggles when working around the emery wheel, and at other places where drills were used, and had posted a bulletin in the usual place in the shops in December 1925, requesting all employees to use goggles in performing work dangerous to the eyes, and advising that these goggles could be secured from the tool room, upon request, and should be returned to the tool room when 'the work was finished for which they were used.

"(5). None of the car repairers used goggles out on the yards prior to the injury, nor did the foreman insist on the use of goggles when performing the kind of work in which the plaintiff was engaged at the time of the injury, but any employee could have used goggles and would have been furnished with same on request.

"(6). After the injury of plaintiff, the defendant railroad came under the control of the G. M. & N. R. R. Co. and in order to comply with the general rules of that company, all employees were required to obtain goggles and wear them when working in places dangerous to the eyes. From that time on the employees of the defendant company were required to sign up for a pair of goggles.

"(7). The Federal Law in regard to certain safety appliances which railroads are required to furnish for the protection of their employees does not include goggles for car repairers.

"(8). Plaintiff never requested the defendant company to furnish goggles or other protection for his eyes.

"(9). For several years prior to the time that plaintiff received the injury to his eye, during which other employees had removed the nuts on the brake wheels in a similar manner as used by plaintiff, without goggles, no serious injury to the eyes had been suffered by any other employee of the defendant company.

"Under this state of facts is the defendant liable for the injury suffered by the plaintiff?

■■■ "It may be stated in the beginning that the above finding of facts shows that there is no negligence on the part of defendant shown for a failure to furnish a safe place in which to work, nor in the tools—the hammer and chisel—with which he was working. If plaintiff has shown negligence on the part of defendant it must be relative to proper protection for the eyes, that is the failure of the defendant to require its employees, including plaintiff, to wear goggles in repairing brake wheels and other parts of cars. The Federal Safety Appliance Law does not require a railroad company to furnish goggles for its employees. 27 Stat. 531, c. 196; 32

Stat. 943, c 976; 36 Stat. 298, c. 160; 36 Stat. 913, c. 103 (45 USCA § 1 et seq.). Also see testimony of Gary p. 70—

"Q. 'Are you familiar enough with the federal safety appliance law—federal statute covering safety appliance to say if that is one of them? A. Yes, sir. Q. Does that come under the Federal Statute? A. No sir, it does not.'

"This same witness further testified that his company required the use of these goggles as a matter of protection and not as a requirement of the federal safety appliance law.

■■■ "This being the case, the defendant is not prevented from pleading contributory negligence and assumption of risk on the part of plaintiff, as these two defenses were abolished by the Federal Employers' Liability Act of April 22, 1908, §§ 3, 4 (45 USCA §§ 53, 54), where the railroad's failure to comply with the safety appliance law as enacted by congress contributes to the injury. Seaboard Air Line Ry. v. Horton, 233 U. S. 492, 34 S. Ct. 635, 58 L. Ed. 1062, L. R. A. 1915C, 1, Ann. Cas. 1915B, 475; Jacobs v. Southern Ry. Co., 241 U. S. 229, 36 S. Ct. 588, 60 L. Ed. 970; Kreger v. Baltimore & O. Ry. Co. (D. C.) 25 F.(2d) 726.

■■■ "Therefore, the pleas of contributory negligence and assumption of risk, will have to be determined by the common law rules as applied in the federal courts as well as the question of negligence for the failure of the employer to furnish proper tools and a safe place in which to work. Ordinarily the employee assumes the risk of dangers of his employment of which he has knowledge, and which dangers are not increased by any act of the employer. Kreger v. Baltimore & Ohio R. Co. (D. C.) 25 F.(2d) 726; Johns-Manville v. Pocker (C. C. A.) 26 F.(2d) 204.

■■■ "In the absence of proof that other railroads find it necessary to require car inspectors and car repairers to use goggles to protect the eyes of their employees, it is not negligence for a railroad to fail to furnish goggles or require their employees to wear them when engaged in this class of work. With one rather important exception, the case of Stapleton v. Reading Company, 26 F.(2d) 242, presents very similar facts to the case at bar. This case was decided by the United States Circuit Court of Appeals, May 1st, 1928, and the following pertinent expressions are quoted from that opinion:

"In the court below, the court at the close of the testimony, granted a compulsory nonsuit, whereupon the plaintiff sued out this writ, which involves two questions: First, whether under the plaintiff's proofs the defendants showed negligence; and, second, whether in such case the court had power to grant a compulsory nonsuit. On the first question we agree with the court below. The alleged negligence of the railroad was that

it had not furnished goggles to the plaintiff, and such failure caused the injury to the plaintiff's eye, which was caused by a particle of steel which struck his eye when he tapped a crack in the wheel.

" 'The proof shows plaintiff had worked as a car wheel inspector for nine years. He testified that in all that time he had never worn goggles himself, and had never seen any other inspector wear them, and that it was important to have one's eyes clear when doing such work. In view of this character of work being done on the railroad for this long period by the plaintiff and other car wheel inspectors without goggles, and in the absence of proof that other railroads provided them, we find no proof of defendant's negligence on which to submit that issue to the jury. The court would therefore have been justified in giving binding instructions to the jury to find for the defendant.'

■ "It is a matter of speculation as to what the court in the above case would have found, had there been testimony to show that one or more other railroads furnished goggles for their car inspectors. It might be reasonably argued that in such a case the court would have submitted to the jury the question of whether such failure to furnish goggles constituted negligence. What the jury would have decided in such a case is a still further matter of speculation. Therefore, in applying the principles laid down in the above case to the present case, we must take into consideration the finding of fact that at least one other road—the G. M. and N. railroad which acquired the control of defendant—did furnish and require its employees, including car repairers, to wear goggles. What the custom is with other roads does not appear. It seems to be the general rule, in chipping or trimming iron or steel castings shafts, rods and wheels with a hammer and chisel, not to use goggles nor require their use, unless there is some unusual danger incurred, or unless the employee requests their use. Harbacek v. Fulton Iron Works Co., 287 Mo. 479, 229 S. W. 803; Johnson v. Brick & Coal Co., 276 Mo. 42, 205 S. W. 615; Wexler v. Salisbury, 91 Minn. 308, 98 N. W. 95, 96; Wulfert v. Murch Bros. Const. Co. (Mo. App.) 232 S. W. 243; Morris v. Wagner Electric Mfg. Co. (Mo. App.) 243 S. W. 424. It is held in these cases that the risk of being injured by flying particles striking the eyes is an ordinary one incident to the nature of the work and apparent to the employee, and therefore a risk which he assumes as part of his work. The work in which the present plaintiff was engaged was of a similar nature, and the risk of sustaining injury to his eye by flying particles of rust was apparent and incidental to his work.

"Even though it were held to be negligence on the part of the defendant railroad in failing to require the car repairers to wear goggles, it is doubtful if plaintiff would have a right of recovery. He admits that no request was made for goggles, nor did he ever suggest their use, although he had worked in that capacity for over twenty years. Whether or not he knew that goggles could be secured from the tool room as indicated by the bulletin, there is no evidence that he ever made any request for goggles. It is very likely that he could have secured goggles from the defendant company had he made a request for same.

"As was stated in the opinion rendered in the previous case, if plaintiff's claim had been regulated by the compensation law of the State, there would be no question of his right to recover. But the court has no other alternative than to follow the federal law and the decisions of the courts thereunder. When it is considered that plaintiff has given the best years of his life in the service of the company, it seems unfortunate that he is not able to claim compensation under the State law, nor recover under the federal law controlling in cases arising in interstate commerce. However, the courts do not make the laws but must apply them to the cases as they are presented for decision.

"For these reasons I am of the opinion that plaintiff has failed to make out a cause of action under the federal employers' liability act, and his suit will have to be dismissed."

In that opinion, the issues presented, and the rules of law upon which the judgment is grounded are clearly stated.

■ In their brief counsel for plaintiff refer to the general rule which requires the master to furnish his servants with a reasonably safe place to work and with reasonably safe material to do the work.

Roussell, a witness for plaintiff, was questioned as follows, in reference to the place plaintiff was working:

"Q. On that roof of that car and the platform, was there anything impractical or anyway it could be made more safe to work to remove the brake staff? A. Not that I know of.

"Q. Did you ever know of any safer way to remove a brake staff. A. Not that I know of."

Other witnesses testified practically to the same effect on this subject.

Plaintiff testified that the hammer and chisel with which he was working at the time he was injured were in good condition. There is nothing in the evidence to indicate that they were in the least defective; and, with this admission of the plaintiff, it must be concluded that plaintiff was furnished with good material to do his work and with a safe place for the performance of his services.

Though counsel refer to the questions above discussed, if we properly appreciate their argument, the main defense upon which they rely for a reversal is on the contention that defendant railroad company failed to furnish

goggles to plaintiff for the protection of his eyes while he was engaged in his work.

■ Counsel for plaintiff refer to Code of Laws of the United States, vol. 44, p. 1 (45 USCA § 1 et seq.), under title, Railroads, wherein it is provided that common carriers engaged in interstate commerce must furnish safety appliances and equipments for the protection of their employees.

While admitting that, though goggles are not specifically mentioned in the act as an appliance, the word "equipment" therein used, counsel contend, covers all appliances necessary for protection to its employees in carrying on the work of railroad companies.

The part of the act upon which this contention is based provides for the recovery of damages against a carrier where injury to the employee results from the negligence of its officers, etc., "or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." Federal Employers' Liability Act § 1 (45 USCA § 51).

The word "appliances" employed in that act, as we understand it, has reference to the adjusting of something to the engine, roadbed, or track, etc., mentioned in the statute. The further provision therein made says: "Or other equipment." The word "other" preceding "equipment" has reference to some apparatus in character corresponding in nature or kind to the things mentioned in the act. We do not think that the statute intended to embrace in the words "appliance" and "equipment" goggles for the use of the employees of railroad companies.

Counsel also refer, on this subject, to the case of Philadelphia, Baltimore, & Washington R. Co., Appt., v. Lillian Tucker, 35 App. D. C. 123, L. R. A. 1915C, p. 39. In that case the court was called upon to apply the provisions of an act holding the master in damages resulting from the negligence of the carrier by reason "of any defect or insufficiency due to its negligence, in its cars, * * * machinery, track, roadbed, ways, or works." In that case the issue turned on the question as to whether the carrier had in violation of, an act of Congress, failed in the performance of its duty of properly safeguarding a "way" for its servants going to and from their work. In the construction of that statute, the court gave the following definition of the word "insufficiency" used in the act. The court said the meaning is: "Not sufficient; lacking in what is necessary or required," etc. The court held that the "way" was inadequate and lacked in what was necessary or required. Obviously, a way for the safe passage of the employees was an integral part of the work in which the carrier was engaged, or inherent thereto, and could be assimilated to an equipment or apparatus.

The furnishing of goggles cannot, as we see it, come under that classification so as to bring them within the intendment of such a statute. If the furnishing of goggles had been required of defendant company by some legal enactment or statutory provisions, and if it had failed to provide them, it would be precluded from urging the defense of contributory negligence on the part of plaintiff and assumption of risk by him.

This is the generally accepted doctrine by the federal courts in their application of the Federal Employers' Liability Act (45 USCA §§ 51-59). There is, as hereinabove stated, no law which required defendant company to furnish goggles to its employees, but it was, however, shown that, notwithstanding the lack of such legislation, the company had goggles in the office of Epperson, car foreman of the company, and in the toolroom where employees could get them at any time. The fact is that a bulletin, requesting employees to wear goggles while performing work dangerous to the eyes, was glued or tacked on boards in conspicuous places in rooms of defendant's plant where it could be seen by all the employees of defendant company. It was commonly known, as the record shows, that these goggles were obtainable upon request. The fact is that those engaged in repairing cars, including plaintiff, never used these goggles while on the job. The reason is, that no one had ever been known to have suffered any injury to his eyes by rust flying into them, caused by the use of a chisel on the brake wheel of a car prior to the accident which was suffered by plaintiff.

Counsel for plaintiff refer to the testimony of Reagan, general foreman of the car shop of defendant company, where he said that the use of a cold chisel, where rust and steel are being worked on, is dangerous to the eye.

Evidently there is always an element of danger in work of that character, but it appears from the testimony herein that such danger is extremely remote, as plaintiff and other employees, who had been engaged in that occupation for a period of time ranging from ten to twenty years, had never heard of an accident to the eye of any one performing similar services, although the work to repair these cars was of daily occurrence.

Let us say, however, some danger lurked in the work plaintiff was doing, and that the case should be considered from that point of view.

Corpus Juris, vol. 39, p. 762, par. 959, says the general accepted rule is that hammers, chisels, etc., are usually classed as simple tools.

In this paragraph the cases of Southern R. Co. v. Burford, 120 Va. 157, 90 S. E. 616, and Smith v. United Fuel Gas Co., 91 W. Va. 52; 112 S. E. 205, are cited thus: "The danger

incident to the use of a cold chisel and hammers in setting metal nuts on bolts is an obvious and ordinary risk assumed by an adult servant even though he lacks experience in the particular work done," etc.

Here, plaintiff was not an inexperienced servant, but for many years had been working as a car repairer for defendant company, and, if the danger incident to his work was an obvious and ordinary risk, he must be held to have assumed the risk "as an implied part of his contract of employment," and cannot recover, as was held in Johnson v. Brick & Coal Co., 276 Mo. 42, 205 S. W. 615, 618, which is in line with the decision in Harbacek v. Fulton Iron Works Co., 287 Mo. 479, 229 S. W. 803, presenting features, in many respects, similar to those appearing here.

For the reasons given by the district judge, and the above by this court, it is therefore ordered that the judgment appealed from be affirmed, with cost.